2011 ME 78

**TOWN OF LEBANON**

v.

**EAST LEBANON AUTO SALES LLC, et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: June 1, 2011.

Decided: July 12, 2011.

---

E. Chris L'Hommedieu, Esq., Lewiston, ME, for East Lebanon Auto Sales LLC And Linda Corbin.

Alan E. Shepard, Esq., Shepard & Read, Kennebunk, ME, for the Town of Lebanon.

Panel: SAUFLEY, C.J., and LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

GORMAN, J.

[¶ 1] East Lebanon Auto Sales LLC (the LLC) and Linda M. Corbin appeal from a judgment of the District Court (Springvale, *Fritzsche, J.*) entered in favor of the Town of Lebanon on the Town's

complaint alleging violations of the junkyard and automobile graveyards statute, 30–A M.R.S. §§ 3751–3760 (2010). Corbin and the LLC assert that the court erred in failing to dismiss the complaint for technical noncompliance with M.R. Civ. P. 80K and in issuing a judgment against Corbin individually, and that the court's judgment is not supported by the evidence. We vacate the judgment as to Corbin individually, and affirm in all other respects.

## I. BACKGROUND

[¶ 2] In December of 2009, the Town of Lebanon filed a land use complaint against the LLC, Corbin, and Almond J. Cote[1] alleging that property owned by the LLC in Lebanon constituted an illegal automobile graveyard and illegal junkyard, and that the property had an improper subsurface wastewater system.[2] *See* 30–A M.R.S. §§ 3752(1), (4), 3753; M.R. Civ. P. 80K.

[¶ 3] The following evidence, viewed in the light most favorable to the Town, was established at trial. *See Dowling v. Bangor Hous. Auth.*, 2006 ME 136, ¶ 22, 910 A.2d 376, 384. The LLC owns the Lebanon property, on which another business, Lucky Day Auto LLC, operates. Corbin is the sole member of both the LLC and Lucky Day.

[¶ 4] In June of 2009, the Town's code enforcement officer (CEO) visited the property, where he noticed several hundred vehicles located randomly around the buildings. Some of the vehicles were "just shells, parts vehicles; some were nice vehicles; some were repairable vehicles." Many of the vehicles had expired inspection stickers and/or expired registrations, and many lacked sale tags.

[¶ 5] Between June of 2009 and June of 2010, the CEO visited the site twenty-two times. Although there were fewer of the offending vehicles on the site each time, the property always contained more than three unregistered or uninspected vehicles located outside, even as of the date of the hearing in June of 2010. The CEO also noted a "pile of debris" on the property, including vehicle carcasses, tires, furniture, and trash. Neither the LLC nor Lucky Day had a valid automobile graveyard permit or a junkyard permit. *See* 30–A M.R.S. §§ 3752(1), (4), 3753.

[¶ 6] The court issued a judgment in favor of the Town against the LLC and Corbin individually in the amount of $2000, plus attorney fees of $4000. Corbin and the LLC appeal from the court's denial of their motion for findings of fact and con-

---

1. The court later dismissed the complaint as against Cote, whom Corbin states in her brief is her brother and a former member of the LLC; Cote is not a party to this appeal.

2. "A person may not establish, operate or maintain an automobile graveyard ... or junkyard without first obtaining a nontransferable permit from the municipal officers of the municipality in which the automobile graveyard ... or junkyard is to be located...." 30–A M.R.S. § 3753 (2010). "Automobile graveyard" is defined as "a yard, field or other outdoor area used to store 3 or more unregistered or uninspected motor vehicles, as defined in Title 29–A, section 101, subsection 42, or parts of the vehicles" and includes "an area used for automobile dismantling, salvage and recycling operations." 30–A M.R.S. § 3752(1) (2010). "Junkyard" is defined as

> a yard, field or other outside area used to store, dismantle or otherwise handle:
> **A.** Discarded, worn-out or junked plumbing, heating supplies, electronic or industrial equipment, household appliances or furniture;
> **B.** Discarded, scrap and junked lumber; and
> **C.** Old or scrap copper, brass, rope, rags, batteries, paper trash, rubber debris, waste and all scrap iron, steel and other scrap ferrous or nonferrous material.

30–A M.R.S. § 3752(4) (2010).

clusions of law, and for reconsideration. In denying the motion, the court did note that the LLC and Corbin "are one for purposes of this litigation and operationally" and that "[a]ny notice or service issue is one of no consequence, and was raised solely to obstruct the progress of litigation."

## II. DISCUSSION

[¶ 7] We first address Corbin's contention that the court erred in issuing a judgment against her individually given that the LLC owns the property at issue. "Whether the corporate form should be disregarded involves factual findings that are reviewed for clear error." *Advanced Constr. Corp. v. Pilecki*, 2006 ME 84, ¶ 10, 901 A.2d 189, 195.

[¶ 8] Pursuant to 31 M.R.S. § 645(1) (2010), a member of a limited liability company is not individually liable for the debts or liabilities of the LLC. In order to establish the individual liability of a member, the plaintiff must demonstrate at a minimum: "(1) the defendant abused the privilege of a separate corporate identity; and (2) an unjust or inequitable result would occur if the court recognized the separate corporate existence." *Johnson v. Exclusive Props. Unltd.*, 1998 ME 244, ¶¶ 6–7, 720 A.2d 568, 571 (listing twelve factors to assist in determining whether a party has abused the corporate form).

[¶ 9] Here, there is no dispute both that Corbin is the sole member of both the LLC and Lucky Day, and that the LLC owns the property at issue. The court found that "Corbin and her various corporations and entities appeared to be closely inter-connected and fully under her control." Nevertheless, the record contains no evidence that suggests, and the court's orders contain no findings, that Corbin abused the privilege of incorporating, or that an unjust result would occur if only the LLC were held liable on the Town's complaint.[3] We therefore vacate the decision as to Corbin individually.

[¶ 10] The remaining issues raised by the LLC are without merit. Contrary to the LLC's contentions, the complaint contained fair notice of the nature and scope of the Town's legal claims against the LLC, and afforded the LLC the ability to fully defend itself against them. *See Smith v. Hawthorne*, 2002 ME 149, ¶ 11, 804 A.2d 1133, 1138; *Richards v. Soucy*, 610 A.2d 268, 270 (Me.1992). To the extent the complaint was served incorrectly, the LLC does not dispute that it received actual notice of the complaint, and makes no argument that it was in any way prejudiced by any insufficiency in service. *See Ireland v. Carpenter*, 2005 ME 98, ¶ 11, 879 A.2d 35, 38–39. Finally, the evidence presented at trial, when viewed in the light most favorable to the Town, is adequate to support the court's determination that the LLC operated an automobile graveyard and a junkyard without a permit.[4] *See* 30-A M.R.S. §§ 3752(1), (4), 3753; *Town of Vassalboro v. Barnett*, 2011 ME 21, ¶ 19, 13 A.3d 784, 790; *Dowling*, 2006 ME 136, ¶ 22, 910 A.2d at 384.

The entry is:

Judgment vacated as against Linda M. Corbin individually, and affirmed in all other respects.

---

3. Neither is there any evidence or a finding that Corbin undertook any individual acts of wrongdoing distinct from those of the LLC. *See Blue Star Corp. v. CKF Props., LLC*, 2009 ME 101, ¶ 44, 980 A.2d 1270, 1280.

4. The LLC does not challenge the sufficiency of the evidence with regard to the claim alleging an improper subsurface wastewater system.