MAINE SUPREME JUDICIAL COURT                                Reporter of Decisions
Decision:      2015 ME 166
Docket:        Cum-14-272
Argued:        April 8, 2015
Decided:       December 31, 2015

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

FAITH TEMPLE

v.

STEVEN DIPIETRO

HJELM, J.

[¶1]  In 2012, Faith Temple, a church located in Portland, filed a complaint in state court seeking a judgment based on a U.S. Bankruptcy Court judgment that, under a former name, it obtained in 1985 against Steven DiPietro.  During the pendency of the state court action, Faith Temple also moved for a writ of execution on the original bankruptcy judgment.  The court (*Wheeler, J.*) issued an order directing the issuance of a writ, and then granted judgment on the pleadings in favor of Faith Temple on both its complaint and DiPietro's counterclaim against Faith Temple and its pastor, Phillip Stearns, whom DiPietro had joined as a counterclaim defendant.

[¶2]  In this appeal, DiPietro contends that (1) Faith Temple's complaint was not premised on a cause of action that is recognized in Maine; (2) the Bankruptcy Court's 1985 judgment is unenforceable for lack of jurisdiction to issue a money

2

judgment; (3) the court erred in authorizing the issuance of the writ of execution; (4) the court erred in granting judgment on the pleadings to Faith Temple; and (5) the court erred in dismissing his counterclaim against Stearns. Because we agree that the court erred in authorizing issuance of the writ of execution and in granting judgment on the pleadings to Faith Temple, we vacate both the execution order and the judgment. Further, because DiPietro stated claims against Stearns individually, we vacate the order granting Stearns's motion to dismiss.

## I. BACKGROUND

[¶3] In 1982, Faith Temple, which, according to the record, was then operating under the name of First United Pentecostal Church, entered into a contract with Steven DiPietro for construction of a church. After receiving partial payment from Faith Temple, DiPietro failed to complete the construction and then filed for bankruptcy in the U.S. Bankruptcy Court for the District of Maine. As part of that proceeding, Faith Temple, proceeding under its former name, sought a dischargeability determination for its breach of contract claim against DiPietro pursuant to 11 U.S.C.S. § 523(a)(2)(A) (LEXIS through Pub. L. No. 114-91). In May 1985, the Bankruptcy Court issued a memorandum decision, concluding that $11,000 of the $25,000 claimed by First United was nondischargeable and directing entry of an order to that effect. The Bankruptcy Court, acting through its clerk, then issued an order stating that First United was entitled to "recover of the

defendant Stephen W. DiPietro, the sum of $11,000 with interest at the rate provided by law from the date of entry of the order of judgment plus its costs." The order states that it was sent to DiPietro's attorney, but DiPietro denies receiving notice of the order.

[¶4] In September 2012, more then twenty-seven years after the Bankruptcy Court issued its decision, Faith Temple filed a complaint in the Maine District Court (Bridgton) seeking a judgment against DiPietro in the amount of the Bankruptcy Court judgment plus compounding post-judgment interest, for a total of $119,547.25. On an ex parte motion filed by Faith Temple, the court (*Powers, J.*) allowed an attachment against DiPietro's property in the amount of $125,000. DiPietro then removed the case to the Superior Court (Cumberland County) and filed a motion to dismiss the complaint.

[¶5] In July 2013, after the court (*Wheeler, J.*) denied his motion to dismiss, DiPietro filed an answer to the complaint and a counterclaim against Faith Temple and Stearns.[1] In his answer, DiPietro denied virtually all of the factual allegations set out in the complaint, including Faith Temple's allegation that he had not paid the judgment. Additionally, he raised thirty-two affirmative defenses, primarily involving the validity of the Bankruptcy Court judgment and Faith Temple's

---

[1] Although Stearns was not originally a plaintiff in the case, DiPietro's claims against him rendered him a counterclaim defendant pursuant to M.R. Civ. P. 13(h).

4

failure to obtain a writ of execution, but also including defenses such as laches, estoppel, and fraud. In his counterclaim against both Faith Temple and Stearns, DiPietro sought a declaratory judgment that Faith Temple was not entitled to a writ of execution, and also alleged slander of title; negligent infliction of emotional distress; intentional infliction of emotional distress; unjust enrichment; abuse of process; violation of 42 U.S.C.S. § 1983 (LEXIS through P.L. 114-91); and misrepresentation and concealment.

[¶6] Stearns moved to dismiss DiPietro's counterclaim against him, claiming that he was improperly joined pursuant to M.R. Civ. P. 13(h), and also arguing that he could not be held individually liable for actions taken in his capacity as pastor of the church. Additionally, Faith Temple filed a motion for issuance of an order to show cause why an execution should not issue on the Bankruptcy Court judgment pursuant to 14 M.R.S. § 4654 (2015), which governs executions that do not fall within statutory time limits. DiPietro opposed the motion, arguing that Faith Temple had not presented any reasons for its delay in enforcing the Bankruptcy Court judgment and that, in any event, the judgment was invalid.

[¶7] In November 2013, a non-testimonial hearing was held on all pending motions. On December 30, 2013, the court granted Stearns's motion to dismiss

DiPietro's counterclaim against him and Faith Temple's motion for an order to show cause, directing that a writ of execution issue.

[¶8]  DiPietro moved for findings of fact pursuant to M.R. Civ. P. 52 and for reconsideration of the December 2013 order pursuant to M.R. Civ. P. 59(e).  At around the same time, Faith Temple filed a motion for judgment on the pleadings pursuant to M.R. Civ. P. 12(c), arguing that because the court had determined that the bankruptcy judgment was valid and authorized issuance of an execution, there was no merit to any of DiPietro's affirmative defenses or counterclaims.  Faith Temple also filed a motion for an additional attachment, calculating that "pre-judgment interest and costs can reasonably be expected to total $154,000," and requesting that the existing attachment be increased to that amount.  In his opposition to that motion, DiPietro requested that the existing attachment be dissolved or reduced.

[¶9]  On June 4, 2014, the court issued orders adjudicating all pending motions.  First, it denied DiPietro's motion for findings of fact and reconsideration, and directed that "[e]xecution shall issue forthwith" in the amount of $11,000 plus compounding post-judgment interest.  The court also issued an order granting DiPietro's motion to reduce the original attachment, reducing it from $125,000 to

6

$52,195.[2] At the same time, however, the court issued an order granting Faith Temple's motion for an additional attachment, ordering that attachment be made against DiPietro's property in the total amount of $163,091.48.[3] The court also granted Faith Temple's motion for judgment on the pleadings "because the court rejects [DiPietro]'s analysis of this case in its entirety," and entered final judgment for Faith Temple. DiPietro filed a timely appeal of those orders and the court's December 2013 order pursuant to 14 M.R.S. § 1851 (2015) and M.R. App. P. 2(b)(3).

## II. DISCUSSION

### A.    Complaint for an Action on a Judgment

[¶10]    As a threshold matter, DiPietro contends that Maine does not recognize a cause of action to obtain a domestic judgment on a foreign judgment and that the trial court therefore erred by not dismissing Faith Temple's complaint. Although DiPietro correctly asserts that there is no statute affirmatively establishing a cause of action to seek a judgment based on a foreign judgment, a review of Maine's common law history of enforcing foreign judgments reveals that

---

[2]    In its order, the court agreed with DiPietro that compound interest on the judgment was "unauthorized." This figure thus appears to be the $11,000 judgment plus annual simple interest for thirty years at the same rate at which Faith Temple had sought compounding interest (9.15%), with another $11,000 erroneously added to it.

[3]    Although the court had accepted DiPietro's contention that simple, rather than compound, interest should be awarded, this number reflects the $11,000 judgment with compounding interest at a rate of 9.15% for thirty years. The court, however, again appears to have added an extra $11,000 to the result.

such a claim exists. Therefore, despite Faith Temple's failure to articulate a legal basis for its complaint, we must reject DiPietro's argument.

[¶11]  Prior to the approval of the Uniform Enforcement of Foreign Judgments Act in 1948 by the National Conference of Commissioners on Uniform State Laws, *see* Unif. Enf't of Foreign Judgments Act prefatory note (Nat'l Conference of Comm'rs on Unif. State Laws 1964), the only method for enforcing a foreign judgment in most states was through an action on the judgment. *See* Restatement (Second) of Conflict of Laws § 100 cmt. b (Am. Law Inst. 1971) (stating that "the method usually employed in this country for the enforcement of a foreign judgment for the payment of money is to bring a new action in the nature of debt upon the judgment in the forum State and to obtain a new judgment there"); *see also Milwaukee Cty. v. M. E. White Co.*, 296 U.S. 268, 270-71 (1935) (recognizing federal district court jurisdiction over "suits upon a judgment . . . which were maintainable at common law upon writ of debt").

[¶12]  That cause of action for "debt on a judgment" has its genesis in English common law, and was recognized in Massachusetts at the time of the founding of the United States. *See Bissell v. Briggs*, 9 Mass. (9 Tyng) 462, 466 (1813) (recognizing that, pursuant to statute, "actions of debt may be brought upon any judgment for debt, damages, or costs, rendered in any court of record of the United States"); *Bartlet v. Knight*, 1 Mass. (1 Tyng) 401, 404 (1805) (stating that

"[b]y the rules of common law, the judgment of a court of justice is a ground of action for the party recovering").

[¶13]  When Maine acquired statehood in 1820, the Legislature codified the cause of action for debt on a judgment.  *See* P.L. 1821, ch. 59, § 35 ("[U]pon the judgment for debt, damages or costs which has been, or which shall be rendered and recorded by a Court of record in any other of the United States, or by a Court of record of the United States and remaining in force and unsatisfied, an action of debt may be brought in any Court of record of this State . . . ."); *McKim v. Odom*, 12 Me. 94, 99, 103-04 (1835) (interpreting the statute to allow for an action of debt on the judgment of a court of equity in another state).  In 1841, however, pursuant to the Report of the Commissioners Appointed to Revise the Public Laws of the State of Maine, the section providing for that cause of action was removed from the Maine Revised Statutes without comment.  *See* R.S. ch. 115 (1841); R.R. 1840, Title X, ch. 115.  Since that time, there has been no express statutory codification in Maine of the cause of action for a debt on a judgment.

[¶14]  In *Edwards v. Moody*, 60 Me. 255, 257-58 (1872), however, based on a review of the common law history and other statutes that referred to the cause of action, we concluded that "the right to maintain an action of debt" continued to exist "by implication," even though the statutory provision expressly creating that claim was removed in 1841.  In particular, we pointed to remaining statutory

provisions associated with a cause of action for debt on a judgment, such as the statute of limitations and a statute providing for interest on the judgment of a foreign court. *Id.* That reasoning still applies: Title 14 M.R.S. § 752 (2015) provides a six-year statute of limitation for all civil actions "except actions on a judgment or decree of any court of record of the United States, or of any state," suggesting that there remains a common law action on a judgment.

[¶15] In 1975, Maine adopted the Uniform Enforcement of Foreign Judgments Act, *see* P.L. 1975, ch. 335 (effective Oct. 1, 1975) (codified as amended at 14 M.R.S. §§ 8001-8008 (2015)), providing for the first time that a judgment creditor may file a copy of a foreign judgment with the clerk of a state court. *See* 14 M.R.S. § 8003. The Act further provides that once filed, the foreign judgment has the same effect and enforceability as a state court judgment. *See id.* The Act was designed to provide "a speedy and economical" way to enforce foreign judgments without the need to institute a separate action. *See* Unif. Enf't of Foreign Judgments Act prefatory note (Nat'l Conference of Comm'rs on Unif. State Laws 1964).

[¶16] The Act also makes clear, however, that it was not intended to be the exclusive means of enforcing foreign judgments in state courts. *See* 14 M.R.S. § 8007. In fact, section 8007 provides that "[t]he right of a judgment creditor to bring an action to enforce his judgment instead of proceeding under this Act

remains unimpaired." *Id.*; *see also Burke v. Iowa Dist. Court*, 546 N.W.2d 582, 583 (Iowa 1996) (stating that the Uniform Act "preserves the optional method of enforcing a foreign creditor's judgment by bringing an action in the Iowa district court"); *Tri-State Tank Corp. v. Higganum Heating*, 699 A.2d 201, 203 (Conn. App. Ct. 1997) (explaining that similar language in a Connecticut statute "preserved the common-law right of a judgment creditor to bring an independent action on the judgment" (quotation marks omitted)); *Alexander Constr. Co. v. Weaver*, 594 P.2d 248, 250 (Kan. Ct. App. 1979) (stating that the Uniform Act "is merely another method available to the judgment creditor"). Therefore, despite the legislative enactment of an expedited and more efficient procedure under the Uniform Act, the common law cause of action for debt on a judgment survives, *see Edwards*, 60 Me. at 257, and, absent some other bar to the claim, such as laches or a statute of limitations, Faith Temple was entitled to pursue such an action. Consequently, the court correctly denied DiPietro's motion to dismiss Faith Temple's complaint seeking a judgment on the Bankruptcy Court judgment.[4]

---

[4] DiPietro's brief can be read to argue that the presumption of payment after twenty years found in 14 M.R.S. § 864 (2015) completely bars Faith Temple's complaint. We have held that section 864 "does not . . . bar" actions commenced after twenty years; rather, it merely creates a rebuttable presumption. *Carter v. Carter*, 611 A.2d 86, 88 n.2 (Me. 1992); *see also Knight v. Macomber*, 55 Me. 132, 134 (1868). Thus, it does not prevent Faith Temple from going forward with its action, although Faith Temple will have the burden of overcoming the presumption of payment before it can prevail on its claim.

B.    Execution of the Judgment

[¶17]  DiPietro contends that, even if Faith Temple's complaint is premised on a recognized cause of action, the court erred in directing that an execution issue on the bankruptcy judgment.  We agree.

[¶18]  Pursuant to 14 M.R.S. § 4651 (2015), executions may issue "on a judgment of the Superior Court or the District Court."  Faith Temple chose not to invoke the streamlined procedure established in the Uniform Enforcement of Foreign Judgments Act, which, if successful, would have transformed the bankruptcy judgment into a state court judgment that was enforceable through a writ of execution.  Instead, Faith Temple commenced a separate action.  Because that separate action had not yet resulted in a favorable state court judgment, Faith Temple did not have a state court judgment upon which it was entitled to obtain a writ of execution.  Thus, the court erred in ordering that an execution issue.[5]

[¶19]  DiPietro raises several other challenges to the court's order directing issuance of a writ of execution, including whether the court followed the procedural requirements of 14 M.R.S. § 4654 and whether the court properly applied 14 M.R.S. § 864 (2015), which provides that a judgment is presumed paid after twenty years from its issuance.  Because we hold that the execution should

---

[5]  It does not appear from the record that a writ of execution was ever issued.  If execution was issued, it is void.

not have issued in the first place, we do not reach these other challenges to the issuance of an execution.

C.      Validity of the Bankruptcy Court Judgment

[¶20]  DiPietro also advances several arguments to support his contention that the bankruptcy judgment is void and therefore unenforceable.   Because DiPietro did not appeal the bankruptcy judgment at the time it was entered, his right to collaterally attack the judgment in this later proceeding is limited. *See Reville v. Reville*, 370 A.2d 249, 253-54 (Me. 1977); *Hobbs v. Hurley*, 117 Me. 449, 453, 104 A. 815, 817 (1918).

[¶21]  A challenge to a court's subject matter jurisdiction is one instance where a collateral attack on a judgment is permissible, because "[f]undamental lack of authority in the court to enter the judgment for want of jurisdiction either of the subject matter or over the parties . . . transcends any waiver of the right of appeal."   *Warren v. Waterville Urban Renewal Auth.*, 290 A.2d 362, 365 (Me. 1972).  We will therefore consider DiPietro's argument that the Bankruptcy Court did not have subject matter jurisdiction to issue a money judgment against him because issuance of a money judgment is not a "core" bankruptcy proceeding pursuant to the Bankruptcy Act, *see* 28 U.S.C.S. § 157(b)(1) (LEXIS through P.L. 114-91).   Because he is collaterally attacking the judgment in a new proceeding, DiPietro must "demonstrate affirmatively from the face of the record

that the court lacked jurisdiction." *Warren*, 290 A.2d at 366; *see also Guardianship of Gabriel W.*, 666 A.2d 505, 507-08 (Me. 1995) (stating that lack of subject matter jurisdiction must "appear[] on the face of the record of the judgment attacked").

[¶22]   "Bankruptcy courts have only the jurisdiction permitted under the Constitution and given to them by Congress." *Juan Juan Chen v. Wen Jing Huang (In re Wen Jing Huang)*, 509 B.R. 742, 750 (Bankr. D. Mass. 2014) (alteration omitted) (quotation marks omitted).  The Bankruptcy Act gives bankruptcy courts jurisdiction over "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11."  28 U.S.C.S. § 157(b)(1); *see also Stern v. Marshall*, 564 U.S. ---, 131 S. Ct. 2594, 2620 (2011); *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 85-87 (1982).  "[D]eterminations as to the dischargeability of particular debts" are core proceedings pursuant to the Act. *See* 28 U.S.C.S. § 157(b)(2)(I) (LEXIS through Pub. L. No. 114-91). Consequently, the Bankruptcy Court had subject matter jurisdiction to determine that DiPietro's liability to Faith Temple was nondischargeable.  The question here, however, is whether it is clear "on the face of the record," *see Guardianship of Gabriel W.*, 666 A.2d at 508, that the Bankruptcy Court's liquidation of the debt and issuance of a money judgment incident to its dischargeability determination exceeded its subject matter jurisdiction.

14

[¶23]  The majority of federal courts to consider the issue have concluded that bankruptcy courts have jurisdiction to quantify a debtor's liability and enter a money judgment against the debtor as a function of their authority to determine the dischargeability of a debt.  *See, e.g., Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015, 1018 (9th Cir. 1997) ("We conclude, in conformity with all of the circuits which have considered the matter, that the bankruptcy court acted within its jurisdiction in entering a monetary judgment . . . in conjunction with a finding that the debt was non-dischargeable."); *Porges v. Gruntal & Co. (In re Porges)*, 44 F.3d 159, 164 (2d Cir. 1995) (holding that pursuant to federal statute and the court's "inherent equitable powers," a bankruptcy court had jurisdiction to issue a separate money judgment after determining the amount and dischargeability of a claim).  This has been referred to as the "expansive approach" to jurisdiction. *See Cambio v. Mattera (In re Cambio)*, 353 B.R. 30, 32 (B.A.P. 1st Cir. 2004).

[¶24]  Although some courts, including the First Circuit Bankruptcy Appellate Panel, have adopted the "limited jurisdiction approach" and declined to enter money judgments, even those courts have recognized that there is significant disagreement and that they are in the minority.  *See id.* at 32-34 (describing the division between courts that take the expansive approach to jurisdiction and courts that take the limited jurisdiction approach, and noting that "[m]ost published decisions adopt the expansive approach"); *First Omni Bank N.A. v. Thrall (In re*

*Thrall)*, 196 B.R. 959, 963-64 (Bankr. D. Colo. 1996) (declining to enter a money judgment on nondischargeable debt but recognizing that the "standard operating procedure" of "most [bankruptcy] courts" is to enter a money judgment on a nondischargeable debt). Indeed, the U.S. Bankruptcy Court for the District of Massachusetts recently exemplified that point by rejecting the "limited approach" adopted by *Cambio* and adopting the "majority position" that bankruptcy courts do have jurisdiction to enter a money judgment following a dischargeability determination. *See, e.g., Juan Juan Chen*, 509 B.R. at 747, 751-52.[6]

[¶25] These cases demonstrate that the law in this area is unsettled and that there is significant legal authority to support the Bankruptcy Court's exercise of jurisdiction to determine DiPietro's liability as part of its dischargeability determination. Accordingly, the "face of the record," *Guardianship of Gabriel W.*, 666 A.2d at 508, falls short of establishing that the court lacked subject matter jurisdiction to reduce the nondischargeable claim against DiPietro to a money

---

[6] In *Juan Juan Chen v. Wen Jing Huang (In re Wen Jing Huang)*, 509 B.R. 742, 749-50 (Bankr. D. Mass 2014), the court expressed the view that bankruptcy courts do not have the authority to issue money judgments incident to a dischargeability determination when "money judgment" is defined as "a judgment that entitles a party to enforcement of the judgment in [the Bankruptcy] Court" because enforcement of a judgment is not a "core proceeding." The court held, however, that bankruptcy courts do have subject matter jurisdiction "to liquidate or quantify the underlying debt and to determine the debtor's liability thereon." *Id.* at 749-50. That is what the Bankruptcy Court did here: its order was limited to a determination of the amount of DiPietro's nondischargeable liability to First United, which Faith Temple now seeks to enforce in state court. Therefore, under the *Juan Juan Chen* analysis, issuance of that order was within the Court's jurisdiction.

16

judgment. DiPietro's collateral challenge to the judgment issued against him by the Bankruptcy Court is therefore unavailing.[7]

D.    Judgment on the Pleadings

[¶26]    DiPietro contends that the court erred in granting Faith Temple's motion for judgment on the pleadings pursuant to M.R. Civ. P. 12(c). We review a judgment on the pleadings de novo. *See Howe v. MMG Ins. Co.*, 2014 ME 78, ¶ 5, 95 A.3d 79. Here, the court entered judgment for Faith Temple on its complaint and against DiPietro on his counterclaim counts against Faith Temple, stating without explanation that DiPietro was "unable to meet his burden of proof for all of his 32 Affirmative Defenses and 11 Counterclaims."[8] We review each part of the judgment in turn.

---

[7]    DiPietro also challenges the validity of the judgment on the grounds that the money judgment was issued separately by the clerk, not by the court. We do not consider that argument because it is not grounds for a collateral attack on a judgment. *See Hobbs v. Hurley*, 117 Me. 449, 453, 104 A. 815, 817 (1918) (stating that a foreign judgment is not open to collateral attack "unless it was obtained by fraud or unless want of jurisdiction appears on the face of the record").

[8]    Although the court's signed order only states that the court was dismissing DiPietro's affirmative defenses and did not expressly enter judgment for Faith Temple on its complaint, the corresponding docket entry recites a final judgment in favor of Faith Temple for $11,000. Because the judgment as entered in the docket meets the requirements of a final judgment, *see Murphy v. Maddaus*, 2002 ME 24, ¶¶ 11-13, 789 A.2d 1281, and because neither party has questioned the pathway to the docket entry, we will assume that the judgment shown in the docket entry was entered at the direction of the court pursuant to M.R. Civ. P. 58. This is sufficient to allow us to properly reach the parties' arguments as an appeal from a final judgment. *See Safety Ins. Group v. Dawson*, 2015 ME 64, ¶ 6, 116 A.3d 948.

1.      Faith Temple's Complaint

[¶27]  When the plaintiff moves for judgment on the pleadings, the motion "challenges the legal sufficiency of the answer."  2 Harvey, *Maine Civil Practice* § 12.14 at 432 (3d ed. 2015); *see also Cunningham v. Haza*, 538 A.2d 265, 267 n.2 (Me. 1988).  Therefore, "[i]t can be effective only when the sole defense is an affirmative one, because any denials of fact by defendant will be taken as true for purposes of the motion and thus will have to be tried."  2 Harvey, *Maine Civil Practice* § 12.14 at 432; *see also Cunningham*, 538 A.2d at 267 ("Conflict between pleadings can be reached only by motion for summary judgment or trial.").

[¶28]  Here, DiPietro denied almost every allegation in the complaint, contesting the amount of the judgment and the allegation that the judgment had not been paid.  Because, on the motion to dismiss, the court was required to take those denials in DiPietro's answer as true, *see* 2 Harvey, *Maine Civil Practice* § 12.14 at 432, there were significant factual and legal issues that needed to be adjudicated or ultimately tried.

[¶29]  In addition, DiPietro raised thirty-two affirmative defenses, some of them—such as laches, estoppel, and fraud—implicating factual issues that remain unresolved.  In some circumstances, the sheer number of affirmative defenses could cause a court to view them as excessive in number and interposed for the purpose of delay, thereby leading to the prospect of sanctions.  *See Fraser Emps.*

18

*Fed. Credit Union v. Labbe*, 1998 ME 71, ¶¶ 8-9, 708 A.2d 1027 (affirming an award of sanctions imposed pursuant to M.R. Civ. P. 11 based on the trial court's finding that many of the twenty-three affirmative defenses and eleven counterclaim counts were factually unsupported and interposed for the purpose of delay). Here, however, the court entered a judgment adverse to DiPietro not as a sanction but based on a determination that no facts had been pleaded to support the merits of his affirmative defenses. Such a ruling must await further development of the record. Thus, the court erred by granting judgment on the pleadings to Faith Temple on its complaint and on DiPietro's affirmative defenses.

2.      DiPietro's Counterclaim against Faith Temple

[¶30]  DiPietro also challenges the court's entry of judgment against him on his counterclaim against Faith Temple. A counterclaim defendant's motion for judgment on the pleadings "is the equivalent of a defendant's motion to dismiss [a complaint] for failure to state a claim." *MacKerron v. MacKerron*, 571 A.2d 810, 813 (Me. 1990). A counterclaim therefore will not be dismissed as insufficient "unless it appears to a certainty that under no facts that could be proved in support of the claim is the [counterclaim] plaintiff entitled to relief." *Monopoly, Inc. v. Aldrich*, 683 A.2d 506, 510 (Me. 1996) (quotation marks omitted). We thus review the legal sufficiency of DiPietro's counterclaim against Faith Temple to determine whether it "sets forth elements of a cause of action or

alleges facts that would entitle [DiPietro] to relief pursuant to some legal theory." *Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶ 6, 54 A.3d 710 (quotation marks omitted).

[¶31] The sole contention in Faith Temple's motion for judgment on the pleadings was that the validity of the bankruptcy judgment was "a key element" of each of DiPietro's counterclaim counts and that, because the court had already issued an execution on the judgment, DiPietro did not have any remaining claim for relief. In reality, however, only count one of DiPietro's counterclaim, seeking a declaratory judgment, was premised on the assertion that an execution could not issue on the bankruptcy judgment. All of the other counts of DiPietro's counterclaim were based on alleged misrepresentations that Faith Temple and Stearns made to the court in seeking an attachment against DiPietro's property and on statements that Stearns made to DiPietro.[9] The fate of DiPietro's remaining claims, therefore, was not necessarily determined by the court's conclusion that the Bankruptcy Court judgment was enforceable and that an execution should issue. Further, as discussed in section B *supra*, the issuance of the execution was in error, thus eliminating the foundation for the court's order. Accordingly, the court erred

---

[9] Faith Temple did not advance any arguments in its motion or on appeal regarding the sufficiency of those individual counts to state claims for relief, nor did it include a memorandum of law in its motion as required pursuant to M.R. Civ. P. 7(b)(3). Thus, Faith Temple has waived any challenge to the sufficiency of DiPietro's individual counterclaims. *See* M.R. Civ. P. 12(h)(2).

in entering judgment on the pleadings against DiPietro merely because it had already ordered that a writ of execution issue.

E.     Motion to Dismiss DiPietro's Claim Against Stearns

[¶32]   DiPietro argues that the court also erred when it dismissed his counterclaims against Stearns, each of which sounds in tort.  The court concluded that DiPietro had failed to state a claim against Stearns because all of the actionable conduct alleged by DiPietro was undertaken by Stearns in his capacity as pastor for Faith Temple.  "We review the grant of a motion to dismiss de novo," *Gorham v. Androscoggin Cty.*, 2011 ME 63, ¶ 9, 21 A.3d 115, "view[ing] the facts alleged in the complaint as if they were admitted," *Ramsey*, 2012 ME 113, ¶ 2, 54 A.3d 710.

[¶33]  In the context of allegations of tortious conduct by an individual, we have recognized that "[c]orporate officers who participate in wrongful acts can be held liable for their individual acts, and such liability is distinct from piercing the corporate veil."[10]   *Advanced Constr. Corp. v. Pilecki*, 2006 ME 84, ¶ 13, 901 A.2d 189.   Thus, even when a corporate agent is acting on behalf of the corporation, he may be liable for his own tortious conduct.  *See Blue Star Corp. v. CKF Props., LLC*, 2009 ME 101, ¶ 44, 980 A.2d 1270; *Pilecki*, 2006 ME 84, ¶ 13,

_____

[10]  DiPietro does not contend that Stearns should be held personally liable by piercing Faith Temple's corporate veil.  Rather, he contends that Stearns is individually liable for torts he allegedly committed while he was acting in the capacity of pastor at Faith Temple.

901 A.2d 189. It is also true, however, that if "an officer or director [of a corporation] did not personally participate in the tortious conduct, has no knowledge of it, or did not consent to it, he or she will not be held individually liable" for the corporation's wrongful acts. *In re Fresenius GranuFlo/NaturaLyte Dialysate Prods. Liab. Litig.*, 76 F. Supp. 3d 321, 336 (D. Mass. 2015) (applying California law); *see also Norwest Capital Mgmt. & Trust Co. v. United States*, 828 F.2d 1330, 1344 & n.11 (8th Cir. 1987). Therefore, if DiPietro had alleged that Stearns bears liability to him on the sole ground that he was an agent of a corporate tortfeasor, the claim against Stearns could not survive as a matter of law.

[¶34] At this stage, however, DiPietro's claims against Stearns are based on allegations that the "counterclaim defendants," including Stearns personally, committed torts that resulted in injury to DiPietro. The claims are thus sufficient to withstand a motion to dismiss, because they allege that Stearns *himself* engaged in actionable conduct against DiPietro, even though he may have acted for the corporation when he allegedly committed the torts. The court therefore erred in dismissing DiPietro's counterclaims against Stearns on the sole ground that Stearns was acting on behalf of Faith Temple when he allegedly engaged in actionable conduct. [11]

---

[11] Stearns relies on a footnote in *Town of Lebanon v. E. Lebanon Auto Sales LLC*, 2011 ME 78, ¶ 9 n.3, 25 A.3d 950, for the proposition that, for an individual agent of a corporation to be held liable, the individual's wrongful act must be distinct from any acts taken as an agent of the corporation. Stearns

22

[¶35]  Stearns also contends that, even if the court erred in dismissing the counterclaim against him on individual liability grounds, the counterclaim should nonetheless have been dismissed because he was improperly joined as a party. *See* M.R. Civ. P. 13(h) ("Persons other than those made parties to the original action may be made parties to a counterclaim or cross-claim in accordance with the provisions of Rules 19 or 20.").  Because DiPietro's claims against Stearns arose out of many of the same transactions or occurrences as those alleged in his claims against Faith Temple and there were questions of law and fact common to both sets of claims, it was proper for Stearns to be permissively joined as a party. *See* M.R. Civ. P. 20 (stating that "[a]ll persons may be joined in one action as defendants if there is asserted against them . . . any right to relief . . . arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action").

---

misconstrues that discussion.  In that footnote, we concluded that an individual who was the sole member of an LLC could not be held individually liable for corporate wrongdoing because the plaintiffs had not proved "any individual acts of wrongdoing distinct from those of the LLC." *Id.* (citing *Blue Star Corp. v. CKF Props., LLC*, 2009 ME 101, ¶ 44, 980 A.2d 1270).  In *Town of Lebanon*, there was no suggestion that the individual herself engaged in any individual wrongful acts, either on her own or acting as an agent of the corporation, and thus she could not be held personally liable pursuant to the theory of agency liability articulated in *Blue Star*.  As we discuss in the text, *Town of Lebanon* therefore does not protect Stearns from liability here, because DiPietro's counterclaim alleges that Stearns personally committed tortious acts for which he can be held liable, regardless of whether he was acting as the agent of a corporation.

It bears note that on appeal, Stearns observes that his liability for actions undertaken as a church pastor may be limited by the First Amendment of the United States Constitution and article I, section 3 of the Maine Constitution, but he does not press the issue.  Accordingly, we decline to reach the application of agency liability principles to churches and their ministers, recognizing that the trial court may address the issue if it is later raised during the course of this litigation.

F.     Attachment

[¶36]    DiPietro does not separately challenge the order granting an attachment against his property, and thus we do not reach the question of whether the court abused its discretion by issuing the order. *See Brickyard Assocs. v. Auburn Venture Partners*, 626 A.2d 930, 934 (Me. 1993). DiPietro does contend, however, that Faith Temple is not entitled to compounding post-judgment interest, therefore implicitly arguing that the court erred in calculating the amount of the attachment to be $163,091.48.

[¶37]    "Entitlement to interest on judgments is derived from statute . . . ." *Walsh v. Cusack*, 2008 ME 74, ¶ 4, 946 A.2d 414 (quotation marks omitted). Here, the controlling statute is 28 U.S.C.S. § 1961 (LEXIS through Pub. L. No. 114-91), which provides for compounding interest on judgments in "civil case[s]" in federal "district court," including bankruptcy cases. *See Lassman v. Keefe (In re Keefe)*, 401 B.R. 520, 526 (B.A.P. 1st Cir. 2009) (holding that 28 U.S.C. § 1961(a) applies to bankruptcy court judgments because "[a] bankruptcy court is a 'unit' of the district court"); *see also Ocasek v. Manville Corp. Asbestos Disease Comp. Fund*, 956 F.2d 152, 154 (7th Cir. 1992); *In re Pester Ref. Co.*, 964 F.2d 842, 849 (8th Cir. 1992). Thus, under controlling federal law, the court did not err in determining that Faith Temple was entitled to compounding post-judgment interest.

[¶38]   We note, however, that the court's calculation of the amount that Faith Temple is likely to receive from a final judgment appears to be erroneous. As is explained above, *see supra* n.2 & n.3, the court apparently added an extra $11,000 when it calculated the amount of the judgment with compounding interest at the statutory rate of 9.15%.  On remand, the court shall correct the amount of the attachment accordingly.

## III.  CONCLUSION

[¶39]   As a judgment creditor, Faith Temple was entitled to choose to file a complaint in state court seeking a judgment on the bankruptcy court judgment in its favor, rather than proceeding pursuant to the Uniform Enforcement of Foreign Judgments Act.   By choosing that path, however, Faith Temple forwent the opportunity to seek an execution on the bankruptcy court judgment and to avoid a full adjudication of the validity of the judgment and any counterclaims raised by DiPietro.  Because DiPietro's answer and counterclaim required the adjudication of factual and legal issues, and because Stearns was properly joined as a counterclaim defendant, DiPietro was entitled to present evidence and have his arguments heard before a final judgment was entered.  The court therefore erred by ordering that an execution issue, granting judgment on the pleadings, and dismissing DiPietro's claims against Stearns when Faith Temple had not met the basic requirements for that relief.

The entry is:

> Judgment vacated. Order directing that a writ of execution issue on the bankruptcy judgment vacated. Order dismissing DiPietro's counterclaims vacated. Remanded for proceedings consistent with this opinion.

---

**On the briefs and at oral argument:**

John S. Campbell, Esq., Campbell & Associates, P.A., Portland, for appellant Stephen DiPietro

David E. Stearns, Esq., Ainsworth, Thelin & Raftice, P.A., South Portland, for appellee Phillip Stearns

G. Charles Shumway II, Esq., Falmouth, for appellee Faith Temple

Cumberland County Superior Court docket number CV-2012-427
FOR CLERK REFERENCE ONLY