STATE OF MAINE                                          SUPERIOR COURT

Cumberland, ss.


FAITH TEMPLE
f/k/a First United Pentecostal Church

    Plaintiff and Counterclaim Defendant

        v.                              Docket No. PORSC-CV-12-427

STEVEN DIPIETRO a/k/a Stephen DiPietro

    Defendant and Counterclaim Plaintiff

        v.

PHILLIP STEARNS

    Counterclaim Defendant

STATE OF MAINE
Cumberland. ss. Clerk's Office

JUL 20 2016

RECEIVED

### ORDER ON ATTACHMENT

Before the court are Plaintiff's Motion for Amended Order of Attachment and Trustee Process and Defendant's Motion to Dissolve Attachment.[1]  The court initially indicated that it would schedule oral argument on the motions, but counsel for the parties have agreed to waive argument.

This extensively litigated case was filed in 2012 in the Bridgton District Court as an action upon a judgment in which Plaintiff Faith Temple seeks a judgment against Defendant Steven DiPietro based on a 1985 U.S. Bankruptcy Court judgment in favor of Plaintiff and against Defendant, in the amount of $11,000. Defendant removed the District Court case to this court, and has counterclaimed and impleaded the pastor of Faith Temple, Phillip Stearns, as a counterclaim Defendant.

---

[1] The Plaintiff's Motion was erroneously granted in a May 4, 2016 Order, which was vacated by virtue of the June 7, 2016 Scheduling Order in this case.

1

Before the case was removed, the District Court granted an ex parte attachment to Plaintiff in the amount of $125,000, based on the face amount of the 1985 judgment plus twenty seven years of compounded post-judgment interest. In 2014, this court increased the total amount of the attachment in favor of the Plaintiff to $163,091.48, granted judgment on the pleadings to Plaintiff and Counterclaim Defendant Stearns on Plaintiff's complaint and Defendant's counterclaims, and directed that a writ of execution issue against Defendant DiPietro. Defendant appealed, and the Supreme Judicial Court of Maine, sitting as the Law Court, upheld the appeal at least to the extent of vacating the judgment and the writ of execution, and remanding for further proceedings. *See Faith Temple v. DiPietro*, 2015 ME 166, 130 A.3d 368. The Law Court decision let stand the attachment and attachment upon trustee process against Defendant's property but directed that the amount of the attachment be reduced by $11,000.

The Plaintiff's Motion for Amended Order of Attachment seeks an attachment in the amount of $198,000, based on a total of 33 years of compounded post-judgment interest. The court initially granted the Motion after 21 days had passed from filing, overlooking the fact that the Defendant had been granted additional time to respond. In response, the Defendant filed a Motion to Reconsider, consisting of two pages, and a separate Memorandum of Law. The motion to reconsider was granted in the court's June 7, 2016 order.

The Memorandum of Law filed with the Defendant's Motion to Reconsider contained within it a further motion, a Motion to Dissolve Attachment. The Defendant's Motion to Reconsider contained the 21-day notice required by M.R. Civ. P. 7(b)(1)(A), but

2

the Memorandum that included the Motion to Dissolve Attachment did not contain that reference.

Understandably, given the rather confusing manner in which the Motion to Dissolve was included in the memorandum of law filed in support of the Motion to Reconsider, Plaintiff did not respond to the Motion to Dissolve within 21 days, and Defendant contends that Plaintiff has thereby waived objection. However, because the Memorandum in which the Motion to Dissolve was made lacked the 21-day notice reference, the Plaintiff retained the right to be heard. *See* M.R. Civ. P. 7(b)(1)(A). Even had the 21-day notice been included in the Memoranda, Plaintiff would have had a good argument for an extension of the deadline for filing an opposition.

Accordingly, the court addresses both the Motion for Amended Order of Attachment and the Motion to Dissolve Attachment on their merits. On the merits of the respective motions, the court is not in agreement with either party's position.

The court disagrees with Plaintiff for two reasons. First, because the Defendant's appeal was successful in large part, the Plaintiff is not necessarily entitled, in the court's view, to post-judgment interest during the pendency of the appeal. Also, the Law Court, in remanding the case, has plainly reinstated the Defendant's defenses and counterclaims, which may operate to reduce any judgment in favor of Plaintiff.

The court disagrees with Defendant because the Defendant has already had an opportunity to contest the attachment, both in this court and in the Law Court. The Law Court has already, in effect, determined that the attachment should remain, albeit reduced in amount. In compliance with the Law Court's mandate, this court will therefore reduce the last attachment granted by $11,000.

3

It is hereby ORDERED:

Plaintiff's Motion for Amended Order of Attachment and Trustee Process is granted in part, to the extent of this Order, and otherwise is denied. Defendant's Motion to Dissolve Attachment is denied. The previously granted attachment is reduced by $11,000, to $152,091.48.

The Clerk, or, if Plaintiff so chooses, Plaintiff's attorney, is authorized to issue an amended writ of attachment and attachment upon trustee process, in the amount of $152,091.48.

The Scheduling Order issued June 7, 2016 remains in full force and effect.

Pursuant to M.R. Civ. P. 79(a), the Clerk is directed to incorporate this order by reference in the docket.

Dated July 20, 2016

_____
A. M. Horton, Justice

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO: CV-12-427
JAW- CUM - 6/13/2013

FAITH TEMPLE, f/k/a FIRST UNITED
PENTECOSTAL CHURCH

Plaintiff,

v.

STEVEN DIPIETRO a/k/a
STEPHEN DIPIETRO

Defendant

ORDER ON
DEFENDANTS'
MOTION TO DISMISS



STATE OF MAINE
Cumberland Clerk's Office

JUN 12 2013

RECEIVED

## ORDER AND DECISION ON MOTION TO DISMISS

Before the court is Stephen Dipietro's Motion to Dismiss all claims asserted in the Complaint. The motion has been fully briefed and oral argument was heard on December 13, 2012.

## BACKGROUND

The Plaintiff, Faith Temple, formerly known as First United Pentecostal Church ("Plaintiff"), is a church located in Portland, Maine. (Pl.'s Compl. ¶¶ 1,2.) On May 13, 1985 Plaintiff obtained a nondishargeable judgment for $11,000 in the United States Bankruptcy Court in the District of Maine against Stephen Dipietro ("Defendant"). (Pl.'s Compl. ¶ 4.) The Plaintiff alleges that the Defendant has never made any payment toward the judgment sum of $11,000 or any interest thereon. (Pl.'s Compl. ¶ 6.) Plaintiff further alleges that pursuant to 28 U.S.C. §1961(a), post judgment principal and post

1

judgment interest compounded annually from May 13, 1985 to August 13, 2012 totals $119,547.25. (Pl.'s Compl. ¶ 11.)

On September 12, 2012 Plaintiff filed the Complaint in this action requesting a judgment against Defendant in an amount equal to said judgment issued by the United States Bankruptcy Court, plus applicable prejudgment interest, post judgment interest and costs, together with any such relief the Court deems just and equitable. (Pl.'s Compl. ¶ 11.) On October 13, 2012 Defendant filed the present Motion to Dismiss for lack of jurisdiction over the subject matter and for failing to state a claim upon which relief can be granted. The Plaintiff opposed the motion on November 20, 2012 and the Defendant filed its reply on December 7, 2012.

On April 13, 2013, this Court stayed the pending matter so that Plaintiff could pursue in the Bankruptcy Court a motion to reopen adversary proceeding and an order seeking entry of am order to show cause to enable the judgment creditor to obtain execution. On April 23, 2013, the Bankruptcy Court denied these motion to reopen on the grounds that he no longer, after twenty years, had jurisdiction to reopen this case.[1] Both parties filed supplemental memoranda of law disputing the meaning of the Bankruptcy Court's ruling on April 23, 2013. The only reason to reference this short trip

---

[1] The Plaintiff submitted a transcript that Plaintiff's counsel prepared of the hearing before the Bankruptcy Court judge because that judge did not enter a written order. In that transcript, the Bankruptcy Court stated, ". . . case was limited to determination of nondichargeability. That's out there. It's not discharged. You've got a life judgment. You may go forward in state court."

The Bankruptcy Court also refused to look at the retroactivity of *Stern v. Marshall*, and said to counsel,

> Liquidating that nondischargeable debt is a state cause of action which isn't necessarily part of the bankruptcy proceeding and collection in any event . . . have always been left to state court processes. My answer to you is you got a judgment, it is what it is, it is either sufficient in of itself by the basis for execution by the state court . . . if you want me to go back and look at retroactivity of *Stern v. Marshall* on a 25-year old judgment, there is no sense in my doing that because I frankly don't think I have jurisdiction anymore. The judgment is entered. You do with it what you will. Motion to reopen is denied.

2

to the Bankruptcy Court is that the Bankruptcy Court refused to reopen a twenty-five year old judgment.

## DISCUSSION

The purpose of a motion to dismiss is to test the legal sufficiency of the complaint. *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994). The court examines "the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* When testing the complaint under M.R. Civ. P. 12(b)(6), the material allegations of the complaint must be taken as admitted. *Id.* "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Johanson v. Dunnington*, 2001 ME 169, ¶ 5, 785 A.2d 1244. The statute of limitations may be raised by motion to dismiss if the facts giving rise to the defense appear on the face of the summons and complaint. *State v. Milam*, 468 A.2d 620, 621 (Me. 1983).

I.     *Enforcement of Judgment of Federal Bankruptcy Court*

Defendant argues that because a federal court issued the $11,000 judgment, the enforceability of the judgment is governed by the federal rules of civil procedure. In particular, the Defendant cites Fed.R.Civ.P. 69 as the source provision for enforcing federal court money judgments. Defendant argues that Fed.R.Civ.P. 69 requires that enforcement of money judgments be done by way of writ of execution and that the procedures to follow in that process are those of the state where the federal district court that issued the judgment is located. Defendant further argues that because the Plaintiff has not obtained a writ or complied with Maine's procedures for obtaining such writs,

3

filing suit twenty-seven years after the issuance of the judgment is not an acceptable

means of collection under Maine Law.


Federal Rule 69 States in pertinent part:

> Process to enforce a judgment for the payment of money shall be a
> writ of execution, unless the court directs otherwise. The
> procedure on execution, in proceedings supplementary to and in
> aid of a judgment, and in proceedings on and in aid of execution
> shall be in accordance with the practice and procedure of the state
> in which the district court is held, existing at the time the remedy is
> sought, except that any statute of the United States governs to the
> extent that it is acceptable. In aid of the judgment or execution, the
> judgment creditor or a successor in interest when that interest
> appears of record, may obtain discovery from any person,
> including the judgment debtor, in the manner provided in these
> rules or in the manner provided by the practice of the state in
> which the district court is held.

Fed.R.Civ.P. 69(a).

The Defendant argues that because Federal Rule 69 directs the court to look to the

law of the forum state to determine how long writs are valid and what limitations period

exist for enforcing a federal judgment, the Plaintiff's claim is time barred under Maine

Law.

The Defendant argues that since the Plaintiff failed to take any action to collect on

the judgment rendered May 13, 1985, more than 27 years before the complaint was filed

with this Court, the judgment is presumed to have been paid under Maine Law, and the

judgment ceases to exist. To support his position the Defendant cites 14 M.R.S. § 864

which states that,

> Every judgment and decree of any court of record of the United
> States, or of any state, or justice of the peace in this State shall be
> presumed to be paid and satisfied at the end of 20 years after any
> duty or obligations accrued by virtue of such judgment or decree.

Additionally the Defendant argues that Federal Rule 69 requires that any enforcement of a federal judgment be by way of obtaining a writ of execution. The Defendant directs the Court to 14 M.R.S. § 4652[2] to establish that Maine law provides that a writ of execution must be obtained within one or two years after judgment and that a renewal execution can only be obtained within ten years after the first execution is issued. The Defendant further supports his position by pointing out that even if the Plaintiff had obtained a writ within one year, it would have expired years later. (Mot. Dismiss 8).[3]

In response the Plaintiff contends that while 14 M.R.S. § 864 creates a presumption of payment after twenty years, it is not a statute of limitations on a money judgment such as the one entered on May 13, 1985 in the United States Bankruptcy Court in the District of Maine. *Cloutier v. Turner*, 2012 ME 4, 34 A.3d 1146. The Plaintiff points out that when an execution has not been issued under 14 M.R.S. § 4652 (one year limit) or section 4653 (alias execution issued within 10 years), 14 M.R.S. § 4653 allows a creditor to move for an execution against the judgment debtor. At that time, the debtor must show cause why execution on the judgment should not be issued, "and if no sufficient cause can be shown, execution may be issued thereon." 14 M.R.S. 4654 (2012).

---

[2] 14 M.R.S. § 4652 (2012) states,
> No first execution shall be issued after one year from the time the judgment has become final by the expiration of the time for appeal, by dismissal of an appeal, or on certificate of decision from the law court, except in cases provided for by section 4701 in which the first execution may be issued within not less than one year nor more than 2 years from the time of judgment.

(Section 4701 deals with default judgment, and therefore is not applicable to the case at bar).

[3] Defendant cites 14 M.R.S. § 4653 "[a]ll alias or pluries execution may be issued within 10 years after the day of the issuance of the preceding execution and not afterwards" to support the position that the ten-year limitation on renewing a writ is unequivocal.

The Defendant's reliance on sections 4652 and 4653 as a time bar to the writ of execution is misplaced. As the Plaintiff correctly points out there is only a presumption of payment after the lapse of twenty years not an absolute bar. A review of the material allegations of the complaint, which must be taken as admitted at this procedural stage, makes clear to this Court that the Plaintiff could overcome any such presumption. In particular, the Court points out that as stated in the complaint and supporting exhibits, the delay in recovering on the judgment is in large part due to the Defendant's own doing.

## II.    *Bankruptcy Court Lacked Jurisdiction to Enter Money Judgment*

The Defendant's Motion to Dismiss argues that the Bankruptcy Court lacked jurisdiction to issue a money judgment and was limited to whether or not the debt was dischargeable. Defendant argues that Courts have concluded that the entry of a dollar judgment is not authorized by the bankruptcy Code and that it is not of benefit to the debtor or the bankruptcy estate, but rather serves only the interests of the creditor by saving him the trouble of going back to state court to obtain a dollar judgment on the debt that the court found to be nondischargeable. The Defendant argues that it has long been the prevailing law in the First Circuit that bankruptcy courts do not have jurisdiction to liquidate nondischargeable claims. To support his position the Defendant cites *In re Cambio*, 353 B.R. 30, 33-34 (B.A.P. 1st Cir. 2004) (holding that the Bankruptcy court did not have jurisdiction to enter a money judgment once it determined the debt to be collected was nondischargeable). Additionally, the Defendant directs the Court to a recent U.S. Supreme Court decision that highlighted the narrow nature of the jurisdiction of the bankruptcy courts and the fact that they have never had the jurisdiction to enter dollar judgments in favor of creditors seeking dischargeability determinations. *See Stern v. Marshall*, 564 U.S. ___, 131 S.Ct. 63, 180 L.Ed. 2d 475 (2011).

6

In contrast the Plaintiff argues that most of the cases cited by the Defendant, such as *In re Hamilton*, 282 B.R. 22, (Bankr. W.D. OK. 2002), freely admit that most of the published opinions addressing the issue conclude that bankruptcy courts do have power to enter money judgments on nondischargeable debts. The Plaintiff further argues that this was the majority rule in 2002 and certainly in 1985 when the judgment in this case was rendered. In response to First Circuit Court of Appeals adoption of the minority rule in 2004, that the Bankruptcy Court did not have jurisdiction to enter a money judgment on a nondischargeable debt, the Plaintiff asks this Court to not apply that rule retrospectively in the instant case. To support his position the Plaintiff argues that when federal courts are deciding whether to apply the holding of a case retrospectively they consider whether the decision overrules clear past precedent on which litigants relied, whether retrospective application would pose an inequity given the merits of an individual case, and whether retrospective application would further or retard operation of the new rule. *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).

The Court agrees with the Plaintiff, and finds that retroactive application of the minority rule established in *In re Cambio* is not appropriate and thus finds that the Bankruptcy Court did not lack jurisdiction in 1985 to make a determination of a money judgment on nondischargeable debt. The history of precedent recited in *Cambio* is instructive: There was no First Circuit precedent on the question of whether bankruptcy courts have jurisdiction to enter money judgments on nondischargeable debts, and other courts addressing the issue were divided, "generally adopting either an 'expansive approach' or a 'limited jurisdiction approach.'" *Cambio*, 353 B.R. 30, 31. In a footnote, the court in *Cambio* acknowledged that "[e]ven within the First Circuit, there is a split of

7

authority on this issue." *Id. Cambio* further discussed how most published decisions adopted the expansive approach, "concluding that bankruptcy court do have the power to enter money judgments on nondischargeable debts . . . [and] every circuit to address the issue has held that there is federal bankruptcy jurisdiction to liquidate and enter a judgment on a nondischargeable debt." *Id.* at 32 (citations omitted). After *Cambio* and *Stern*, another Bankruptcy Court in the First Circuit described the impact of *Stern* on the issue as follows:

> Allowing the bankruptcy court judge to settle both the dischargeability of the debt and the amount of the money judgment accords with the rule generally followed by the courts of equity that having jurisdiction of the parties to controversies brought before them, they will decide all matters in dispute and decree complete relief. *In re Hallahan*, 936 F. 2d 1496, 1508 (7th Cir. 1991) (*citing Alexander v. Hillman*, 296 U.S. 222, 242 (1935) While the court's language in *Hallahan* certainly was a reasonable statement in 1935 and 1991, recent Supreme Court treatment of this subject has cast a much dimmer light on the power of non-Article III courts to render money judgments in dischargeability litigation.

*In re Antonelli*, 2011 Bankr. LEXIS 44414, 2011 WL 5509494, 1 (Bankr. D.R.I. Nov. 10, 2011). The Supreme Court decision implicated in this quote is *Stern v. Marshall*, 131 S. Ct. 2594, 2615 (2011). Given the state of precedent before 2004 when *Cambio* was decided and the fact that the challenged Bankruptcy Court order in this case was entered in 1985 when the majority opinion was that bankruptcy courts had the authority to render money judgments in dischargeability litigation, this court will not apply *Cambio* retroactively.[4] Finally, defendant failed to object or appeal the 1985 Bankruptcy Court decision, and cannot now be heard to object and say that court had no authority to authority to render a money judgment in determining nondischargeability.

---

[4] See *Rutkowski v. Adas* (*In re Adas*), 488 B.R. 358, 379-380, 2013 Bankr. LEXIS 870 (N.D. Ill., Eastern Div.) discussing whether *Stern* impaired the authority to enter a final dollar judgment as part of the adjudication of nondischargeability.

8

The entry is:

Defendant's Motion to Dismiss is DENIED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATE: June 12, 2013

Joyce A. Wheeler
Justice, Superior Court

9