## In Equity.

### J. B. BROWN & SONS *vs.* BOSTON & MAINE RAILROAD.

### Cumberland.     Opinion December 13, 1909.

*Deeds.   Reservations.   Construction.   Railroads.   Right of Way Deed. Specific Performance.*

A reservation in a deed relates only to the land conveyed.

A railway right of way deed binding the company to always maintain an overhead street crossing so far as concerned the property conveyed did not bind the company to build a bridge over an adjoining right of way of another company, though failure to do so defeats the reservation, and though the grantee company afterwards obtained control of the other company.

Specific performance of contracts is a purely equitable remedy, being a substitute for the legal remedy of compensation when it is inadequate or impracticable, and lies within sound judicial discretion on consideration of the particular surrounding circumstances.

Specific performance lies only when the matter can be disposed of by an order enforceable at once, not lying ordinarily to direct the performance of a continuous duty covering several years.

Specific performance does not lie to enforce a reservation in a railway right of way deed where it would not benefit plaintiff, and would put the company at an unnecessary burden and where a decree could not be wholly performed at once.

In equity.   On report.   Bill dismissed.

Bill in equity brought by the plaintiff corporation to compel the specific performance of an undertaking on the part of the defendant,

created by a reservation in a deed of land, to construct and maintain an overhead street crossing suitable for foot passengers and teams. Heard on bill, answer, replication and evidence before the Justice of the first instance. At the conclusion of the evidence, the cause was reported to the Law Court for determination.

The case is stated in the opinion.

*Clifford, Verrill & Clifford, and Philip G. Clifford,* for plaintiff.

*Symonds, Snow, Cook & Hutchinson,* for defendant.

SITTING : WHITEHOUSE, PEABODY, SPEAR, CORNISH, KING, BIRD, JJ.

WHITEHOUSE, J. This is a bill in equity brought by the plaintiff corporation to compel the specific performance of an undertaking on the part of the defendant, created by a reservation in a deed of land, to construct and maintain an overhead street crossing suitable for foot passengers and teams. The case was reported for the determination of the Law Court upon bill, answer and replication, and so much of the evidence reported as is legally admissible.

John B. Brown of Portland, the plaintiff's predecessor in title, was the owner of a tract of land in Portland over which the right of way of the Maine Central Railroad was located, and in 1873 he conveyed a part of it to the defendant, the Boston and Maine Railroad, by a deed containing the following reservation, to wit : "The grantor reserves to himself, his heirs and assigns, the right to an overhead street crossing at such point northerly of the Portland & Ogdensburg location as he, his heirs or assigns may designate, suitable for foot passengers and teams, to be on request constructed and always maintained by the grantees, their successors and assigns, so far as concerns the property herein conveyed, the obligation to do which is imposed upon the said grantees, their successors or assigns, by the acceptance of this deed."

The tract described in this deed is one hundred feet in width and is bounded on the east by the westerly line of the location of the Maine Central Railroad. But the grantor still retained title to the remaining parts of the original tract, one lying on the west side of and adjoining the strip conveyed to the defendant by the deed

in question, and the other situated on the east side of and adjoining the location of the Maine Central Railroad. The plaintiff corporation is successor in title to the two last named tracts of land, and to all rights secured by the reservation above quoted from the deed to the defendant. Thus it appears that the Maine Central location lies between the tract described in the defendant's deed on the west side and land owned by the plaintiff on the east side. The situation is approximately shown by the following diagram:

After reciting the facts above stated the bill alleges that in October, 1908, and at divers other times the plaintiff made a demand upon the defendant to construct an overhead street crossing suitable for passengers and teams, and particularly designated a location therefor, and that the defendant refused so to do. The bill further alleges that the plaintiff has been greatly damaged by such refusal and has no adequate remedy at law, and accordingly prays for a decree to compel a specific performance of the defendant's agreement according to the terms of the reservation in the deed.

The defendant's answer raises no question respecting the title to the several tracts of land mentioned in the bill, and admits the acceptance of the deed of the tract in question with the reservation as stated. It also admits that a demand was made by the plaintiff upon the defendant for the construction of an overhead street crossing, and that a place was designated by the plaintiff for the construction of it across the tract of land conveyed to defendant, and the tracks of the Boston and Maine railroad. The defendant further says that it has at all times been ready and willing to perform any obligations assumed by virtue of the acceptance of the deed in question, but that no street crosses the land of the plaintiff or the location and tracks of the Maine Central Railroad, or the location and tracks of the defendant at the point designated for the overhead crossing by the plaintiff. "That an overhead crossing at that point over the land of the defendant could not be an overhead street crossing; that an overhead crossing at that point, if constructed, would end in the air above the point where the location of the Maine Central Railroad Company adjoins the location of the defendant; that an overhead crossing would not cross the location of the Maine Central Railroad Company, and would not be suitable for and could not be used by, foot passengers and teams; that the construction and maintenance of such an overhead crossing would be impracticable, useless and of no benefit to the plaintiff, and would impose upon the defendant, great, useless and uncalled for expense and hardship, and become a source of danger to the defendant and its employees; and that the obligation to maintain the bridge is continuous." The defendant also denies that the plaintiff

has been greatly damaged by the refusal of the defendant to build the bridge as set out in the bill, and says that if any damage has been sustained, the plaintiff has a clear and adequate remedy at law.

It appears from the testimony of a civil engineer called by the defendant, that an overhead street crossing suitable for foot passengers and teams across the strip of land conveyed to the defendant, must be 102½ feet long and 23 feet high, and if built 60 feet wide in accordance with the resolution of the city council respecting new streets, the cost of such a structure would be fairly estimated at $18,000. The witness expressed the opinion, however, that a bridge 30 feet wide would be suitable and sufficient in that place for any travel that might be expected to go over it. But with the appropriate reduction in the estimate of $18,000, required by this difference in width, it is obvious that the expense of such a structure 30 feet in width would still be very large. He further states that in his opinion such a bridge would not be of any benefit to any one, but only a source of annoyance by reason of the fact that it might obstruct signals in the yard, and in case of any derailment a pier would naturally aggravate any damage that might happen.

It is conceded by the plaintiff that an overhead bridge extending only across the 100 foot tract conveyed to the defendant and terminating in the air 23 feet above the pavement, at the westerly line of the Maine Central location, would be a useless structure; but it is contended that such a bridge would not be a suitable overhead street crossing such as was contemplated by the parties and described in the reservation in the deed. The plaintiff contends that the defendant must be presumed to have had knowledge of the grantor's ownership of the tracts of land on both sides of the strip conveyed, and that in making the reservation in the deed the parties must have contemplated the construction of an overhead crossing which would afford communication from one of these tracts of land to the other over both the Maine Central and the Boston and Maine locations. It is urged that any other construction of the contract would defeat the purpose for which the reservation was made.

This statement of the situation has the merit of plausibility, but the soundness of the argument must be tested by reference to the terms

of the reservation itself. The "grantor reserves . . . . the right to an overhead street crossing . . . . suitable for foot passengers and teams, to be upon request constructed, and always maintained by the grantees, so far as concerns the property herein conveyed." Here in addition to the general rule that a reservation in a deed relates only to the land thereby conveyed, this reservation in express terms limits the liability of the defendant to the land conveyed by the deed. Assuming that the location of a public street was not contemplated by the parties and that this was an undertaking on the part of the defendant to erect an overhead cross- ing, as a private way for the benefit of the grantor's lands, the scope of the language of the reservation cannot be extended beyond its plain and obvious meaning to include an obligation to build a bridge across the Maine Central location. It is highly improbable that the defendant agreed not only to incur the great expense of building a bridge across the land conveyed, but to duplicate the expense by continuing the structure $82\frac{1}{2}$ feet further across the Maine Central tracks. It is still more improbable that the defend- ant would make an absolute contract to do this, irrespective of any statutes then existing or which might thereafter be enacted, designed in the interest of the safety of public travel, to regulate and control all such crossings over railroad locations. (See *Goding* v. *Railroad Co.*, 94 Maine, 542.) If the plaintiff's demand upon the defend- ant for a preformance of his contract had been accompanied by proof that the right to construct and maintain such a bridge over the Maine Central location had been acquired, and that that part of the crossing would be built by the plaintiff, or others, to meet the defendant's structure at the easterly line of the land conveyed, without expense to the defendant, a materially different question might have been involved.

It is true that the defendant subsequently obtained a majority of the stock of the Maine Central Railroad Company, and the plain- tiff contends that it thereby acquired the power and came under obligation to build the bridge across the Maine Central location. But this view cannot be accepted by the court. If the defendant had become the owner of the fee of the Maine Central location, that

fact would not change the language of the contract or create an obligation which did not previously exist.   In such a case the rights of minority stockholders would be under the protection of the law. As the case is presented therefore, it does not satisfactorily appear that the reservation in the deed required the defendant to do more than build and maintain the bridge across the land thereby conveyed.

The relief afforded by a bill for specific performance of contracts is purely equitable and is given as a substitute for the legal remedy of compensation whenever the remedy at law is inadequate or impracticable; and the granting of the equitable remedy is uniformly deemed a matter of sound judicial discretion, controlled by established principles of equity and exercised upon a consideration of all the circumstances of each particular case.   6 Pomeroy's Eq. Remedies 11, sects. 744, 762; *Rogers* v. *Saunders*, 16 Maine, 92;  *Snell* v. *Mitchell*, 65 Maine, 48; *Telegraphone Corp.* v. *Canadian Tel. Co.*, 103 Maine, 444; *Curran* v. *Holyoke Water P. Co.*, 116 Mass. 90; *Washington Irr. Co.* v. *Krutz*, 119 Fed. 279; *Stoughton* v. *La Campagnie*, 113 Fed. 21; *Willard* v. *Tayloe*, 8 Wall. 557.   In the last named case the court said:

"No positive rule can be laid down by which the action of the court can be determined in all cases.   In general it may be said that the specific relief will be granted when it is apparent from a view of all the circumstances of the particular case that it will subserve the ends of justice; and that it will be withheld when from a like view it appears that it will produce hardship or injustice to either of the parties.   It is not sufficient, as shown by the cases cited, to call forth the equitable interposition of the court, that the legal obligation under the contract to do the specific thing desired may be perfect.   It must also appear that the specific enforcement will work no hardship or injustice."

In Pomeroy's Eq. Rem., sect. 796, it is said: "Specific performance not being an absolute right the fact that enforcement would be of little or no benefit to the complainant, and a burden upon the defendant, is sufficient to constitute performance oppressive and it will not be given."   See also *Conger* v. *N. Y. W. S. & B. R.R.*,

120 N. Y. 29. Nor should the contract be such that its specific performance would be nugatory and useless. 4 Pom. Eq. Jur., sect. 1805. "It is an established principle of courts of equity never to enforce the specific performance of any agreement where it would be a vain and imperfect act, or where a specific performance is from the very nature and character of the agreement impracticable and inequitable to be enforced." *Tobey* v. *The County of Bristol,* 3 Story, 824; *Dunforth* v. *Philadelphia R. R.,* 30 N. J. Eq. 12. In *Murdfeldt* v. *N. Y. W. S. & Buffalo Ry.,* 102 N. Y. 703, the facts were analogous to those in the case at bar. There the plaintiff sought to enforce the specific performance of a reservation in a deed in which the defendant agreed to construct and maintain a passageway under its railway. In the opinion the court say: "If the under-crossing should be constructed as stipulated in the covenant, it would partly fill with water at the influx of the river tide, and besides that no practical connection would be made with such under-crossing for the use of the plaintiff by reason of the precipitous character of the high embankment on the west.

"The equities here do not demand the interposition of the court. No available crossing can be made in compliance with the covenant, and even if the defendant should be required to construct the under-passage it would only lead to a narrow strip of unproductive land, which can be reached much better further north where the railroad is built on the natural grade, and the plaintiffs have reserved the right to cross the railway when constructed to and from the same strip of land.

"These and the facts that the under-passage would be subject to the inflowing tide seem quite sufficient to justify the court in refusing to compel the defendant to expend a large amount of money, without any practical utility to the plaintiffs."

There is still another rule respecting this remedy, uniformly recognized by courts of equity, that is also applicable to the facts in the case at bar. It has not been overlooked that by the terms of the reservation the overhead street crossing was not only to be constructed but "always" maintained by the defendant. In Beach

Mod. Eq. Jr., sect. 576, the author says: "The court will decree specific performance only when it can dispose of the matter by an order capable of being enforced at once. It will not direct the performance of a continuous duty extending over a number of years." This question appears to have been carefully examined in *Ross* v. *Union Pacific Ry. Co.*, 1 Woolw. 26, in which the authorities prior to that time are fully considered, and it was there decided that the court could not enter upon the duty of compelling one party to build a railroad and the other party to pay for it according to contract. This case was cited with approval in *Texas Ry.* v. *Marshall*, 136 U. S. 406, in which latter case it is said in the opinion: "If the court has rendered a decree restoring all the offices and machinery and appurtenances of the road which have been removed from Marshall to other places, it must necessarily superintend the execution of this decree. It must be making constant inquiry as to whether every one of the subjects of the contract which have been removed has been restored. It must consider whether this has been done perfectly in good faith, or only in an evasive manner. It must be liable to perpetual calls in the future for like enforcement of the contract, and it assumes, in this way, an endless duty, inappropriate to the functions of the court, which is as ill calculated to do this as it is to supervise and enforce a contract for building a house or building a railroad, both of which have in this country been declared to be outside of its proper functions, and not within its powers of specific performance."

See also *Blackett* v. *Bates*, 1 Chancery App. Cases, 117 ; *Powell Duffryn Steam Coal Co.* v. *Taff Vale Ry. Co.*, 9 Law Rep. Chancery Appeal Cases, 334.

In the case at bar it is manifest that performance of the contract according to the terms of the reservation would not be beneficial to the plaintiff, but would prove imperfect and nugatory ; that it would impose an unnecessary expense and burden upon the defendant; and that since the bridge must be maintained forever, no decree could be made which could be wholly performed at once, but must be for the performance by the defendant of the perpetual duty of

maintaining the bridge and necessarily involve the frequent inter-position of the court to consider the new conditions that might arise during the progress of time.

It is therefore the opinion of the court that a decree of specific performance would be unequitable and ought not to be granted, and that the certificate must accordingly be,

*Bill dismissed with costs.*