MAINE SUPREME JUDICIAL COURT        Reporter of Decisions
Decision:    2020 ME 44
Docket:     BCD-19-298
Argued:    March 5, 2020
Decided:   April 9, 2020

Panel:      SAUFLEY, C.J., and MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

KATHY S. BROWN et al.

v.

COMPASS HARBOR VILLAGE CONDOMINIUM ASSOCIATION et al.

HORTON, J.

[¶1]  Compass Harbor Village Condominium Association and Compass Harbor Village, LLC, appeal from a judgment entered in the Business and Consumer Docket (*Duddy, J.*) in favor of Kathy S. Brown and Charles R. Maples (collectively, the Owners).  The Association and the LLC (collectively, Compass Harbor) argue that the court (1) erred in finding in favor of Brown and Maples on their claim brought pursuant to the Maine Unfair Trade Practices Act (UTPA), 5 M.R.S. §§ 205-A to 214 (2018); (2) erred in calculating damages; and (3) abused its discretion in entering an order of specific performance.[1]  We vacate the order of specific performance, the judgment in favor of Brown and

---

[1]  We are unpersuaded by the additional arguments made by Compass Harbor, and we do not discuss them in this opinion.

2

Maples on the UTPA claim, and the award of attorney fees associated with the UTPA claim.  We affirm the judgment in all other respects.

## I.  BACKGROUND

[¶2]  After a jury-waived trial, the court made the following written findings, which are supported by competent record evidence.  *See Harris v. Woodlands Club*, 2012 ME 117, ¶ 2, 55 A.3d 449.

[¶3]  The Association is a condominium association in Bar Harbor.  The LLC is the declarant of the Association.  *See* 33 M.R.S. § 1601-103(9) (2018).  In 2007, Brown purchased a condominium unit at the Association for $133,502, and Maples purchased a unit for $168,250.[2]  The Association's declaration and bylaws are contracts between Compass Harbor and Brown and Maples. The declaration incorporates the provisions of the Maine Condominium Act, 33 M.R.S. §§ 1601-101 to 1604-118 (2018).[3]  Because the LLC holds more than fifty percent of the votes in the Association, 33 M.R.S. § 1603-103(a) imposes fiduciary obligations on the LLC.

---

[2]  There is a minor and harmless difference between the $168,250 price shown in Maples's purchase and sale agreement and the court's finding that he paid $168,625 for his unit.  *See* M.R. Civ. P. 61.

[3]  Portions of the Maine Condominium Act have since been amended, but not in any way that is relevant to this appeal.  *See* P.L. 2019, ch. 417, § B-14; P.L. 2019, ch. 3, § 1.

[¶4] For many years, the Association has not properly maintained the common areas and exteriors of the condominium units. This has caused, among other problems, rotting wood on units, unpainted unit exteriors, algae in the pool, exceedingly dirty common areas, nonfunctioning laundry appliances, potholes in the roads, and the accumulation of trash in outdoor common areas. Brown's unit had a hole in the front deck that allowed mice to enter her unit. Although Brown made the Association aware of this problem, the Association did not fix the hole for years. Maples has had a broken kitchen window for over four years that the Association had not repaired by the date of trial.

[¶5] The Association has also consistently violated the governance provisions of the declaration and bylaws by, among other things, failing to hold meetings and votes on Association affairs, failing to maintain banking and other Association records, and refusing to provide the Owners with financial information about the Association. Compass Harbor has continually ignored the Owners' requests for financial records and their complaints about its deficiencies with respect to both governance and maintenance.

[¶6] The LLC has taken the position that its failure to hold formal votes on Association affairs was harmless to the Owners because it holds a majority of the voting power in the Association and therefore any dispute between it and

any of the unit owners would ultimately be decided in its favor. The LLC has repeatedly caused the Association to act for the LLC's benefit and to the detriment of the other unit owners without following the procedures laid out in the declaration and bylaws. Additionally, although the LLC owns fifteen of the Association's twenty-four condominium units, the LLC has not consistently paid the Association the required monthly fees for its units.

[¶7] In 2013, the LLC hired, on the Association's behalf, a property manager to maintain the common areas and unit exteriors. The property manager purchased a condominium unit from the LLC, and, as part of this transaction, the LLC agreed to deduct $10,000 from the outstanding balance of the property manager's promissory note for each year that he serves as property manager. The LLC gives itself a $10,000-per-year credit toward the Association fees it owes to compensate itself for "loan forgiveness." The Association did not hold a vote to approve the hiring of the property manager or the LLC's practice of deducting $10,000 per year from its Association fees.

[¶8] Compass Harbor's actions with respect to maintenance and governance of the Association have caused the Owners' units to lose value. Four units at Compass Harbor have sold since 2013 at an average loss of about $53,000.

[¶9] Because the Association does not maintain the common areas, the Owners are unable to use or enjoy them. Compass Harbor's refusal to respond to the Owners' many complaints has caused the Owners to experience such frustration and mental anguish that they both want to sell their units. Maples listed his unit with a real estate broker, but the property had not sold despite having been listed for 297 days prior to trial. Brown would consider selling her unit, but other units at Compass Harbor have recently sold at such great losses that she fears the remaining balance on her mortgage exceeds her unit's market value.

[¶10] Based on these facts, the court found that (1) Compass Harbor breached the contracts between it and the Owners, (2) the LLC violated its fiduciary duties to the Owners, and (3) Compass Harbor violated section 207 of the UTPA. The court awarded $134,900 to Maples and $106,801 to Brown to compensate them for their meritorious claims. These amounts compensated the Owners for "loss of real property rights[,] . . . frustration, mental anguish, devaluing of their [condominium] units, and loss of the enjoyment of their [condominium] units."

[¶11] The court also entered an order of specific performance requiring Compass Harbor to abide by its contractual and fiduciary duties in the future.

6

The order of specific performance requires Compass Harbor to "promptly come into substantial compliance with all of the provisions of the Declaration, Bylaws, and corresponding provisions of the Maine Condominium Act and the Maine Nonprofit Corporation Act."

[¶12]  Following the entry of a final judgment, Compass Harbor timely appealed.  *See* M.R. App. P. 2B(c).

## II.  DISCUSSION

A.    UTPA

[¶13]  Title 5 M.R.S. § 213(1) provides,

> Any person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes and thereby suffers any loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 207 or by any rule or regulation issued under section 207, subsection 2 may bring an action either in the Superior Court or the District Court for actual damages, restitution and for such other equitable relief, including an injunction, as the court determines to be necessary and proper.

The Attorney General has not promulgated any regulations that are relevant to the Owners' UTPA claim.  Thus, the only acts for which there is a remedy pursuant to section 213 are "method[s], act[s] or practice[s] declared unlawful by section 207."  5 M.R.S. § 213(1).  Section 207 states that "[u]nfair methods of

competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful." *Id.* § 207.

[¶14] The court identified two acts by Compass Harbor that violated section 207: first, the LLC's inconsistent payment of Association fees despite its ownership of fifteen of the Association's twenty-four condominium units, and second, the LLC's decision to hire the property manager without formal approval by the Association. Compass Harbor asserts that it was not engaged "in the conduct of any trade or commerce," *id.*, and therefore, that the court erred by ruling in favor of the Owners on their UTPA claim.

[¶15] As used in the UTPA, the words "trade" and "commerce" "include the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity or thing of value wherever situate, and . . . include any trade or commerce directly or indirectly affecting the people of this State." *Id.* § 206(3). A transaction occurs in the conduct of trade or commerce only if it "takes place in a business context, as opposed to one done on a private, nonprofessional basis." *Binette v. Dyer Library Ass'n*, 688 A.2d 898, 907 (Me. 1996). Whether a transaction occurred in the conduct of trade or commerce is a question of law that we review de novo. *See id.*

[¶16] In construing the UTPA, we are to be "guided by the interpretations given by the Federal Trade Commission and the Federal Courts to Section 45(a)(1) of the Federal Trade Commission Act (15 United States Code 45(a)(1)), as from time to time amended." 5 M.R.S. § 207(1); *see State v. Weinschenk*, 2005 ME 28, ¶ 15, 868 A.2d 200. Federal courts have long held that the Federal Trade Commission cannot act pursuant to 15 U.S.C.S. § 45(a)(1) (LEXIS through Pub. L. No. 116-128) absent proof that doing so is in "the interest of the public." *Fed. Trade Comm'n v. Klesner*, 280 U.S. 19, 27 (1929) (quotation marks omitted); *see Removatron Int'l Corp. v. Fed. Trade Comm'n*, 884 F.2d 1489, 1495 (1st Cir. 1989) ("A proceeding is not in the public interest if it is merely a private controversy."). Our case law interpreting the UTPA has reflected this limitation in suits brought by private individuals. *See Binette*, 688 A.2d at 907 (explaining that transactions made "on a private, nonprofessional basis" are outside the scope of the UTPA).

[¶17] The UTPA violations identified by the trial court concern only the internal governance of the Association and therefore did not occur in the conduct of trade or commerce. *See Rafalowski v. Old Cty. Rd., Inc.*, 714 A.2d 675, 677 (Conn. 1998) (adopting the reasoning of the trial court to hold that the alleged mismanagement of a condominium association is not within the scope

of Connecticut's UTPA); *Rafalowski v. Old Cty. Rd., Inc.*, 719 A.2d 84, 91 (Conn. Super. 1997); *cf. Riseman v. Orion Research Inc.*, 475 N.E.2d 398, 400 (Mass. 1985) (holding that Massachusetts's UTPA "does not reach alleged wrongs asserted by a stockholder against a corporation in the internal governance of the corporation"). The LLC's failure to pay Association fees on a consistent basis and its unilateral decision to deduct $10,000 per year from the amount of fees it owed were private actions taken in the context of its roles as a member of the Association and as a fiduciary to the other unit owners. Nothing in the record suggests that the LLC's actions involved "the advertising, offering for sale, sale or distribution of any services [or] any property" within the meaning of the UTPA. 5 M.R.S. § 206(3). Therefore, the UTPA does not provide a remedy for the harms suffered by the Owners as a result of those actions. *See Binette*, 688 A.2d at 907; *cf. Klesner*, 280 U.S. at 27; *Riseman*, 475 N.E.2d at 400.

[¶18] Because the UTPA does not apply, we vacate the judgment in favor of the Owners on Count 10 of the complaint and the award of attorney fees associated with this claim.[4]

---

[4] Our decision regarding the attorney fees associated with the Owners' UTPA claim in no way affects the trial court's conclusion that the Owners are entitled to recover attorney fees related to their claims for breach of fiduciary duty and records inspection.

B.    Damages

[¶19]  The court awarded $134,900 to Maples and $106,801 to Brown for their UTPA claim and their claims for breach of contract and breach of fiduciary duty.  In its decision, the court explained that "[t]he awards of damages under the various claims are in the alternative, and not cumulative."  Therefore, the court's separate awards of damages on the Owners' meritorious claims for breach of contract and breach of fiduciary duty are not affected by our decision on the Owners' UTPA claim.

[¶20]  "[R]easonableness, not mathematical certainty, is the criteri[on] for determining whether damages were awarded properly."  *Down E. Energy Corp. v. RMR, Inc.*, 1997 ME 148, ¶ 7, 697 A.2d 417.  "A monetary award based on a judgmental approximation is proper, provided the evidence establishes facts from which the amount of damages may be determined to a probability."  *Merrill Tr. Co. v. State*, 417 A.2d 435, 441 (Me. 1980); *see Jenkins, Inc. v. Walsh Bros.*, 2001 ME 98, ¶ 18, 776 A.2d 1229.  We review a calculation of damages for clear error, and we will affirm an award of damages if there is any competent evidence in the record supporting it.  *See Down E. Energy Corp.*, 1997 ME 148, ¶ 7, 697 A.2d 417.  Because Compass Harbor did not file a motion for findings on the issue of damages, we will infer that the court made any

supported findings that are necessary to affirm the court's damages awards. *See Pelletier v. Pelletier*, 2012 ME 15, ¶ 20, 36 A.3d 903.

[¶21] The Owners are entitled to compensatory damages for their claims for breach of contract and breach of fiduciary duty. *See Lee v. Scotia Prince Cruises Ltd.*, 2003 ME 78, ¶ 22, 828 A.2d 210 (breach of contract); Restatement (Second) of Torts § 874 (Am. Law Inst. 1979) (breach of fiduciary duty). "An injured party is entitled to recover for all losses actually suffered as a result of the breach." *Lee*, 2003 ME 78, ¶ 22, 828 A.2d 210.

[¶22] The court awarded $134,900 to Maples and $106,801 to Brown to compensate them for the following injuries caused by Compass Harbor: "loss of real property rights[,] . . . frustration, mental anguish, devaluing of their [condominium] units, and loss of the enjoyment of their [condominium] units."[5]

---

[5] The court determined its damages awards by calculating eighty percent of the prices the Owners paid for their respective units. According to Compass Harbor, this demonstrates that the court intended to compensate the Owners only for diminution in market value of their condominium units. We reject this argument. The court's decision makes clear that it was awarding damages for a variety of injuries and merely used a percentage of the condominium units' purchase prices as a mechanism to reach appropriate dollar amounts of damages.

Diminution in value can be an appropriate method of calculating damages when a defendant has caused compensable losses to a plaintiff's property. *See, e.g.*, *VanVoorhees v. Dodge*, 679 A.2d 1077, 1081 (Me. 1996). However, injuries such as "frustration [and] mental anguish" or "loss of enjoyment" of property—which do not affect the value of a plaintiff's property—are usually determined in terms of a different measure of damages. In a case such as this one, where the damages awards compensate the Owners in part for diminution in value of their units and in part for other injuries, it would have been appropriate for the court to calculate awards for such other injuries separately from its calculation of diminution in value damages. Any error in the court's method of calculating damages in this case was harmless, however, because the *amounts* of damages were

12

[¶23] The Owners presented evidence that four units at Compass Harbor have recently sold at an average loss of about $53,000. Yet, Maples's real estate broker testified that, based on comparable listings in the Bar Harbor area, she listed Maples's unit for $199,800—an *increase* from the $168,250 Maples originally paid. From these facts, the court could have found that the Owners' units should currently be worth more than what the Owners paid for them, but, because of Compass Harbor's breaches of contract and the LLC's breaches of fiduciary duty, they are instead worth substantially less. The Owners were therefore entitled to damages to compensate them for this diminution in value. *See Lee*, 2003 ME 78, ¶ 22, 828 A.2d 210.

[¶24] The Owners were also entitled to damages for loss of enjoyment of their units and for mental anguish. *See Curtis v. Porter*, 2001 ME 158, ¶¶ 19-20, 784 A.2d 18 ("We have long allowed recovery for mental anguish . . . in most tort actions." (quotation marks omitted)); Restatement (Second) of Torts § 874 (explaining that a plaintiff can recover in tort for "harm[s] resulting from a breach of [fiduciary] duty"). The Owners presented evidence that Compass Harbor's failure to maintain common areas has prevented them from enjoying

---

reasonable and supported by the record. *See infra* ¶¶ 23-26; *cf.* M.R. Civ. P. 61; *Shaw v. Packard*, 2005 ME 122, ¶ 13, 886 A.2d 1287 (stating the harmless error standard).

their properties to the extent that they would have if Compass Harbor had followed its contractual and fiduciary obligations. This included, for example, testimony that the pool heater has been broken for years and that the pool has had algae in it, that the laundry room is filthy and the machines often do not work, that the exterior of Brown's unit had a hole that allowed mice to enter her unit, and that the Association had not fixed Maples's broken kitchen window for over four years as of the date of trial. In short, the evidence overwhelmingly supports the court's finding that Compass Harbor's neglect of its duty to maintain common areas deprived the Owners of the use and enjoyment of their properties.

[¶25] Furthermore, both Owners wanted and expected to belong to a functioning condominium association in which they would be able to participate in decision-making. Instead, they had to endure a dysfunctional association that has repeatedly ignored their complaints about both maintenance and governance. Both Owners testified that Compass Harbor's disregard for their concerns has caused them such frustration and mental anguish that they want to sell their units and leave the Association. In fact, the Owners would sell their respective units but for the substantial loss in market value caused by Compass Harbor's actions. Based on these facts, the record

amply supports damages awards to the Owners for the mental anguish they have experienced as the result of the LLC's breaches of fiduciary duty. *See Curtis*, 2001 ME 158, ¶¶ 19-20, 784 A.2d 18; Restatement (Second) of Torts § 874.

[¶26]  Considering the extensive injuries suffered by the Owners over several years prior to trial, and combined with the evidence of diminution in value of the Owners' respective condominium units, *see supra* ¶ 23, we conclude that the court did not clearly err in calculating damages.[6]

C.    Specific Performance

[¶27]    Finally, Compass Harbor argues that the court abused its discretion in ordering specific performance because (1) the court's award of both damages and specific performance was an improper double recovery and (2) the order of specific performance is difficult or impossible for the court to supervise and enforce.

---

[6] The court correctly noted that the Association and the LLC are jointly and severally liable for the damages related to the Owners' claims for breach of contract, and that the LLC alone is liable for damages for the claim for breach of fiduciary duty.  However, pursuant to the Maine Condominium Act, when the declarant controls the association—as in this case—the declarant "is liable to the association or to any unit owner: (1) For all tort losses not covered by insurance suffered by the association or that unit owner; and (2) for all costs which the association would not have incurred but for the breach of contract or other wrongful act or omission." 33 M.R.S. § 1603-111 (2018). Thus, although the Association is liable to the Owners for damages resulting from its breaches of contract, the LLC is liable to the Association for any costs incurred by the Association as the result of the judgment against it.

[¶28]   We review an order of specific performance for an abuse of discretion. *See Sullivan v. Porter*, 2004 ME 134, ¶ 25, 861 A.2d 625.  "An abuse of discretion may be found where an appellant demonstrates that the decisionmaker exceeded the bounds of the reasonable choices available to it, considering the facts and circumstances of the particular case and the governing law." *Sager v. Town of Bowdoinham*, 2004 ME 40, ¶ 11, 845 A.2d 567.

[¶29]   "The court will decree specific performance only when it can dispose of the matter by an order capable of being enforced at once.  It will not direct the performance of a continuous duty extending over a number of years." *J.B. Brown & Sons v. Boston & Me. R.R.*, 106 Me. 248, 257, 76 A. 692 (1909) (quotation marks omitted); *see* Restatement (Second) of Contracts § 366 (Am. Law Inst. 1981).   A trial court considering an award of specific performance must weigh the "burdens in enforcement or supervision" against "the advantages to be gained from enforcement and . . . the harm to be suffered from its denial."  Restatement (Second) of Contracts § 366.  Therefore, a court should ordinarily refrain from ordering specific performance if doing so will "necessarily involve the frequent interposition of the court to consider the new conditions that might arise during the progress of time." *J.B. Brown & Sons*, 106 Me. at 258, 76 A. 692.

16

[¶30]  In this case, the order of specific performance would involve the court in continuous supervision of whether Compass Harbor is adequately maintaining the common areas and the exteriors of units and whether it is properly governing the Association.  For instance, the order of specific performance could result in ongoing judicial review of whether Compass Harbor had performed its duties to "promptly clean the laundry and ensure all machines are working properly" and to "ensure minutes of all meetings are kept, in sufficient detail to inform owners of what transpired at the meetings." We conclude, under the particular facts of this case, that the court went beyond its discretion in entering an order that would require it to oversee Compass Harbor's performance continuously and in minute detail over an indefinite period.[7]  *See id.*

[¶31]  For these reasons, we vacate the portion of the judgment ordering specific performance.[8]

---

[7]  We do not foreclose the possibility that specific performance of an ongoing contractual duty might be appropriate in a future case where, for example, an important public interest is implicated, *see* Restatement (Second) of Contracts § 366 cmt. a (Am. Law Inst. 1981), or where the plaintiff could suffer irreparable harm from the denial of equitable relief, *see Diebold Comput. Leasing, Inc. v. Commercial Credit Corp.*, 267 A.2d 586, 590-92 (Del. 1970).  Nor do we foreclose the option of a receivership or similar remedy in this case if Compass Harbor continues to violate its contractual duties or if the LLC continues to violate its fiduciary duties.

[8]  Because we conclude that the court abused its discretion in ordering specific performance on this basis, we do not reach Compass Harbor's alternative argument that the award of both damages and specific performance was an impermissible double recovery.

The entry is:

> Portions of the judgment (1) ordering specific performance and (2) entering judgment in favor of Brown and Maples on the UTPA claim are vacated. Judgment affirmed in all other respects. Remanded for entry of a judgment consistent with this opinion.

---

Jason J. Theobald, Esq. (orally), and Richard P. Olson, Esq., Curtis Thaxter LLC, Portland, for appellants Compass Harbor Village Condominium Association and Compass Harbor Village, LLC

Brendan P. Rielly, Esq. (orally), Jensen Baird Gardner & Henry, Portland, for appellees Kathy S. Brown and Charles R. Maples

Business and Consumer Docket docket number CV-2018-2
FOR CLERK REFERENCE ONLY