MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2025 ME 19
Docket:        BCD-24-53
Argued:        November 12, 2024
Decided:       February 25, 2025

Panel:         STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

CHARLES R. MAPLES et al.

v.

COMPASS HARBOR VILLAGE CONDOMINIUM ASSOCIATION et al.

HORTON, J.

[¶1]  This appeal calls for us to examine the procedure for enforcing a money judgment against a condominium association.  A judgment entered in the Business and Consumer Docket *(Duddy, J.)* awarded damages to Charles R. Maples and Kathy S. Brown, the owners of two condominium units in the Compass Harbor Village Condominium Association ("Association"), against the Association and the condominium declarant, Compass Harbor Village, LLC ("LLC").  After the judgment became final and remained unsatisfied, Maples and Brown obtained a judgment lien,[1] *see* 14 M.R.S. § 4651-A (2024),

---

[1]  Title 14 M.R.S. § 4651-A (2024) is labeled "Execution [L]iens," reflecting the method for perfecting the lien established by the statute—recording the writ of execution issued on a judgment in designated public registries according to the nature of the judgment debtor's property. 14 M.R.S. § 4651-A(1) to (3).  However, our cases and Maine statutes have referred to section 4651-A liens as "judgment liens" to indicate that the purpose of the liens is to secure payment of money

2

and then filed a new action in the Superior Court (Hancock County) that was later transferred to the Business and Consumer Docket. In a series of orders, the court dismissed Maples and Brown's claims. In this fourth appeal to us involving this dispute, Maples and Brown contend that the court erred in dismissing those of their claims that rely upon a provision of the Maine Condominium Act permitting a judgment creditor of a condominium association to obtain a lien against units in the association, *see* 33 M.R.S. § 1603-117 (2024). However, the provision requires the judgment creditor to proceed by means of the disclosure procedure over which the District Court has exclusive jurisdiction, not by means of an action brought in the Superior Court. *See id.*; 14 M.R.S. §§ 3120-3138 (2024); *Landmark Realty v. Leasure*, 2004 ME 85, ¶ 8, 853 A.2d 749; M.R. Civ. P. 69. Because the transfer of the action to the Business and Consumer Docket could not cure the Superior Court's lack of jurisdiction, we affirm the court's dismissal of the claims.

judgments. *Biette v. Scott Dugas Trucking & Excavating, Inc.*, 676 A.2d 490, 494 (Me. 1996); 14 M.R.S. § 3131(9)(E) (2024); *see also Interstate Food Processing Corp. v. Pellerito Foods, Inc.*, 622 A.2d 1189, 1193 (Me. 1993) (expressing that a money judgment is an award of dollar damages in a sum certain). Although we use the term "judgment lien" in this opinion to refer to section 4651-A "[e]xecution liens," the two terms are not always synonymous in other contexts because some liens are perfected by the recording of judgments rather than writs of execution. *See, e.g.*, 19–A M.R.S. § 953(7) (2024) (enabling creation of a lien through the recording of the abstract of a divorce judgment).

# I. BACKGROUND

[¶2]  "The following facts are drawn from Maples and Brown's amended complaint [in their action on the judgment] and from official public documents central to their claims."  *Maples v. Compass Harbor Vill. Condo. Ass'n (Maples II)*, 2023 ME 46, ¶ 2, 299 A.3d 612 (quotation marks omitted).  "We view these facts as if they were admitted."  *Id.* (quotation marks omitted).

## A.    The Underlying Judgment and Subsequent Events

[¶3]  "The Association is a condominium association in Bar Harbor.  The LLC is the declarant of the Association."  *Brown v. Compass Harbor Vill. Condo. Ass'n*, 2020 ME 44, ¶ 3, 229 A.3d 158.  In 2019, the Business and Consumer Docket entered judgment in favor of Maples and Brown against the Association and the LLC due to their "longstanding and pervasive mismanagement and misconduct."  *Maples II*, 2023 ME 46, ¶ 3, 299 A.3d 612 (quotation marks omitted).  When the judgment was entered, Maples and Brown each owned a condominium unit in the twenty-four-unit Compass Harbor Village condominium development.  The LLC owned fifteen of the other units, and other individuals owned the remaining seven units.  The LLC's fifteen units were subject to a recorded mortgage in favor of The First, N.A.

4

[¶4] The court's judgment awarded damages of $134,900 to Maples and $106,801 to Brown. It also awarded Maples and Brown specific performance, declaratory relief, and attorney fees. In the section of the judgment that addressed declaratory relief, the court placed the following limitation on the Association and the LLC: "Defendants must not impose or attempt to impose or collect any special assessment to pay for their attorney fees and litigation costs, or for the damages awarded in this action." After the Association and the LLC appealed, we affirmed the judgment in part on April 9, 2020. *See Brown*, 2020 ME 44, ¶ 1, 229 A.3d 158. Specifically, we upheld the awards of damages and declaratory relief, but we vacated the order of specific performance, the ruling in favor of Maples and Brown on a claim that they had brought under the Unfair Trade Practices Act (UTPA), 5 M.R.S. §§ 205-A to 214 (2024), and the award of attorney fees on that claim.[2] *Brown*, 2020 ME 44, ¶ 1, 229 A.3d 158.

[¶5] After our decision on appeal, Maples and Brown made a demand on the Association and the LLC for payment of the judgment. Neither the Association nor the LLC has paid anything in satisfaction of the judgment. Evan Contorakes—the sole member of the LLC—died in July 2020. On

---

[2] After the attorney fees associated with the UTPA claim were removed from the overall calculation, the court ordered Compass Harbor to pay Maples and Brown $243,170.38 in attorney fees.

September 21, 2020, Maples and Brown recorded writs of execution in the Hancock County Registry of Deeds, thereby obtaining liens in the amounts awarded in the judgment, with interest and costs, against any Hancock County real estate owned by the LLC or the Association. *See* 14 M.R.S. § 4651-A(1), (4). In October 2020, The First, N.A. foreclosed on the LLC's fifteen units pursuant to its prior mortgage, extinguishing Maples and Brown's judgment liens as to those units.[3] Once the units were foreclosed upon, the LLC had no remaining assets. The Association also lacked assets to satisfy the judgment.

## B.     Maples and Brown's New Superior Court Action

[¶6] On October 21, 2020, Maples and Brown filed a new civil action in the Superior Court (Hancock County) against the Association, the LLC, and the owners of the seven condominium units that were not owned by Maples or Brown or foreclosed upon by The First, N.A. At that time, the owners of the seven units were Eli Simon; Timothy L. Culbertson; Marlo Dee Frontiera and Aaron Frontiera; The Rectors, Wardens, and Vestry of St. Saviour's Episcopal Church; Judith W. Hines and Ralph Blaikie Hines; Peter N. Geary, Christine A. Geary, and Jennifer A. Duffy; and Michael McConomy. On

---

[3] Maples and Brown acknowledge that The First's foreclosure judgment against the fifteen units owned by the LLC extinguished any claim they may have to enforce their judgment against those units.

6

November 19, 2020, Maples and Brown amended their complaint to add Orono, LLC, which had purchased the fifteen units previously owned by the LLC, as a defendant. *See Maples II*, 2023 ME 46, ¶ 5, 299 A.3d 612. Orono has since purchased the units owned by Frontiera, St. Saviour's, Hines, and Geary-Duffy, and was substituted for those parties.[4] *Id.* ¶¶ 11-12 & n.12. The Superior Court transferred the case to the Business and Consumer Docket on January 14, 2021.

[¶7] Maples and Brown's operative pleading in their new action is a five-count first amended verified complaint. Count 1 requests that the court provide "appropriate equitable relief" through a mandatory injunction compelling the Association to impose an assessment against the seven units (those not owned by Maples and Brown or foreclosed upon by The First, N.A.) for their shares of the amount due on the judgment. Count 2 seeks the appointment of a receiver to cause the Association to carry out the assessment. Count 3 alleges that under the Maine Condominium Act, 33 M.R.S. § 1603-117(a), the judgment is a lien against the seven units and that Maples and Brown are accordingly entitled, under the court's "inherent equitable power," to a turnover or sale order of those units. Count 4 requests that the

---

[4] Around The World, LLC, has since purchased the unit owned by Eli Simon and was similarly substituted for him as a party. *See Maples v. Compass Harbor Vill. Condo. Ass'n (Maples II)*, 2023 ME 46, ¶ 12 n.12, 299 A.3d 612.

court issue a judgment of foreclosure and sale against the seven units based on Maples and Brown's alleged statutory judgment lien. Count 5 alleges contempt against the Association and requests punitive and remedial sanctions.

## C.     The Parties' Motions and Appeals

[¶8]   Starting in January 2021 and continuing until January 2024, the parties engaged in motion practice in the Business and Consumer Docket that resulted in two appeals by Maples and Brown. We dismissed both as interlocutory because the court's rulings on the parties' motions did not resolve all claims as to all parties, and no exception to the final judgment rule applied. *Maples v. Compass Harbor Vill. Condo. Ass'n (Maples I)*, 2022 ME 26, ¶ 2, 273 A.3d 358; *Maples II*, 2023 ME 46, ¶ 1, 299 A.3d 612.

[¶9]   Following the second interlocutory appeal, the court entered a series of orders that resolved all pending claims as to all parties. In dismissing Maples and Brown's claims against the owners of the seven condominium units, the court cited the provision in the original judgment prohibiting the Association and the LLC from imposing any assessment upon the owners of the seven units "for payment of the judgment." Maples and Brown timely appealed. *See* 14 M.R.S. § 1851 (2024); M.R. App. P. 2B(c)(1).

8

## II. DISCUSSION

[¶10]  Because the court's multiple orders of dismissal of Maples and Brown's claims in the new action have in combination produced an appealable final judgment, we turn to the merits of the case.  Although Maples and Brown raise several issues on appeal, the single issue we address in depth is whether the court erred in dismissing Count 3 of Maples and Brown's operative complaint, which seeks enforcement of their judgment lien against the seven condominium units pursuant to section 1603-117 of the Maine Condominium Act, 33 M.R.S. § 1603-117.[5]

---

[5]  At Maples and Brown's request, the court dismissed without prejudice their request in Count 2 for the appointment of a receiver for the Association.  Though their initial and reply briefs on appeal focus mainly on why the court erred in refusing to grant them a lien against the seven units pursuant to 33 M.R.S. § 1603-117 (2024), Maples and Brown argue in passing that the court also erred in dismissing counts 1, 4, and 5 of their operative complaint because they "pled their statutory judgment lien as a basis for" those other counts.  We disagree.

Count 1 seeks a mandatory injunction compelling the Association to assess the seven units for an amount sufficient to satisfy their shares of the judgment.  The court dismissed Count 1 because the requested relief was contrary to the judgment's specific declaration prohibiting such assessments.  On appeal, Maples and Brown argue that "they pled their statutory judgment lien as a basis for Count[] 1," but their statutory lien claim did not compel the court to grant injunctive relief because such relief was contrary to a provision of the judgment and because Maples and Brown did not challenge that provision in a cross-appeal in response to the Association and LLC's appeal from the underlying judgment.

Count 4 seeks foreclosure of Maples and Brown's existing judgment lien against the seven units, but because Maples and Brown's existing judgment lien is under 14 M.R.S. § 4651-A, the lien attaches only to property of the judgment debtor, and the units are not property of either the Association or the LLC.  The means by which Maples and Brown can enforce the judgment against the seven units is through 33 M.R.S. § 1603-117, which is the principal subject of our analysis.

Count 5 seeks a finding of contempt, and corresponding punitive and remedial sanctions, against the Association and the LLC.  The court did not err when it ruled that the Association could not be

[¶11]   In addressing the issue, we cannot overlook the question of whether the court had jurisdiction, even though the parties have not addressed it.  *See Dowey v. Sanford Hous. Auth.*, 516 A.2d 957, 959 (Me. 1986) ("[I]f a jurisdictional question exists, we will not hesitate to address it on our own motion.").

[¶12]   The Maine Condominium Act provision on which Maples and Brown's Count 3 relies permits a judgment creditor to collect the amount due on a judgment against a condominium association by obtaining a disclosure order for the turnover or sale of units in the association.  *See* 33 M.R.S. § 1603-117; 14 M.R.S. § 3131.  The District Court has exclusive jurisdiction over disclosure proceedings.  *See* 14 M.R.S. § 3121-A(1); *Landmark Realty*, 2004 ME 85, ¶ 8, 853 A.2d 749.  The issue thus devolves to whether a judgment creditor may obtain relief under 33 M.R.S. § 1603-117 through an action in the Superior

---

held in contempt because, given the judgment's prohibition on assessing unit owners, Maples and Brown did not plead facts that, viewed in the light most favorable to Maples and Brown, showed that it was possible for the Association to comply with the judgment. *See White v. Nason*, 2005 ME 73, ¶ 7, 874 A.2d 891 (stating that, to find a party in contempt, a court must find that "it is within the alleged contemnor's power to perform the act required" (quotation marks omitted)); M.R. Civ. P. 66(d)(2)(D); M.R. Civ. P. 66(c)(3)(B); *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830.

Separately, Maples and Brown argue that, assuming that they can enforce their judgment lien against the unit owners under 33 M.R.S. § 1603-117, they are entitled to recover the attorney fees awarded in the underlying case.  Because we conclude that the Business and Consumer Docket, acting in an action transferred from the Superior Court, lacked jurisdiction to enforce the underlying judgment against the unit owners under section 1603-117, we do not reach this issue.  *See State v. Sloboda*, 2020 ME 103, ¶ 22 n.9, 237 A.3d 878 (declining to consider a challenge to the sufficiency of the State's evidence due to a lack of subject matter jurisdiction).

Court instead of through a disclosure proceeding in the District Court. We first examine the remedy that Maples and Brown chose—a new civil action in the Superior Court in the nature of a common law action on a judgment—and then turn to whether they can use that remedy to enforce their judgment against the seven condominium units pursuant to 33 M.R.S. § 1603-117.

## A.    The Common Law Action on a Judgment

[¶13]   In enacting the disclosure procedure for enforcing money judgments in the District Court, the Maine Legislature made it clear that "[i]t is not an exclusive procedure and may be utilized with any other available procedure."  14 M.R.S. § 3120.  One set of such other procedures appears in the statutes prescribing methods for seizing and selling property of a judgment debtor on execution.  *See* 14 M.R.S. §§ 2201-2209 (2024) (seizure and sale of real estate on execution); 14 M.R.S. §§ 4751-4762 (2024) (seizure and sale of goods on execution); 14 M.R.S. §§ 4901-4905 (2024) (seizure and sale of corporate shares);  *see also* 14 M.R.S. §§ 8001-8008 (2024) (Uniform Enforcement of Foreign Judgments Act); 14 M.R.S. §§ 8801-8813 (2024) (Uniform Foreign-country Money Judgments Recognition Act); 14 M.R.S. §§ 8901-8913 (2024) (Uniform Registration of Canadian Money Judgments Act).

[¶14] Beyond these statutory enforcement procedures, the common law remedy of an action on a judgment also remains available. *Faith Temple v. DiPietro*, 2015 ME 166, ¶ 16, 130 A.3d 368 ("[D]espite the legislative enactment of an expedited and more efficient procedure under the Uniform [Enforcement of Foreign Judgments] Act, the common law cause of action for debt on a judgment survives . . . ." (citing *Edwards v. Moody*, 60 Me. 255, 257 (1872))). "The main purpose of an action on a judgment is to obtain a new judgment which will facilitate the ultimate goal of securing the satisfaction of the original cause of action." *Fidelity Nat'l Fin. Inc. v. Friedman*, 238 P.3d 118, 121 (Ariz. 2010) (quotation marks omitted). Before the enactment of the Uniform Enforcement of Foreign Judgments Act, an action on a judgment was necessary to domesticate a foreign judgment, and it may still be used for that purpose in lieu of the expedited procedure under the Act. *See Faith Temple*, 2015 ME 166, ¶¶ 11, 16, 130 A.3d 368. An action on a judgment also enables the assignee of a judgment to obtain a judgment in the assignee's name and to obtain an execution on the judgment. *See* 14 M.R.S. §§ 2020-2021 (2024); *Hayes v. Rich*, 101 Me. 314, 315-16, 64 A. 659, 659-60 (1906).

[¶15] The new action that Maples and Brown filed in the Superior Court resembles an action on a judgment in that all of the claims asserted were

12

predicated on the existence of their judgment against the LLC and the Association. We turn to the question of whether they could use their new action to obtain satisfaction of their judgment through a turnover or sale of the seven units under 33 M.R.S. § 1603-117.

## B.    The Applicable Lien Statutes

[¶16]  The two lien statutes that Maples and Brown have invoked are the general judgment lien statute, 14 M.R.S. § 4651-A, and the lien statute specific to judgments against condominium associations, 33 M.R.S. § 1603-117.  Of the two, it is the latter that is pivotal here.  This is because a lien obtained under 14 M.R.S. § 4651-A attaches only to property owned by the judgment debtor.  If Maples and Brown were seeking to proceed against property owned by the Association or the LLC, they could have the property seized and sold on execution, and their judgment lien could give their judgment priority over other claims against the same property.  *See* 14 M.R.S. §§ 2201-2209; *Snell v. Libby*, 137 Me. 62, 64, 15 A.2d 148, 149 (1940) (commenting on the priority of judgment liens).  However, a condominium association—and this Association in particular—does not own the condominium property; it is the unit owners that collectively own the condominium units and common areas.  *See* 33 M.R.S. § 1602-107 (2024) (providing for the ownership of the condominium's

common elements to be allocated among the condominium units); 33 M.R.S. § 1603-101 (2024) (stating that a condominium association is an organization whose membership consists of the unit owners). Accordingly, to enforce their judgment lien against the seven units, Maples and Brown must use the procedure specified in the Maine Condominium Act, which provides in pertinent part:

> A judgment for money against the association, if a lien order is filed with the Register of Deeds of the county where the condominium is located, as provided in Title 14, section 3132, as it or its equivalent may be amended or modified from time to time, is not a lien on the common elements, but is a lien in favor of the judgment lienholder against all of the units in the condominium at the time the judgment was entered.

33 M.R.S. § 1603-117(a).

[¶17] The cross-reference to 14 M.R.S. § 3132 appears to be out of date, because the current version of section 3132 covers only possessory liens on personal property and therefore does not apply. *See* 14 M.R.S. § 3132 (2024). However, the version of section 3132 in effect when 33 M.R.S. § 1603-117 was enacted[6] included provisions similar to those that now appear in section 3131,

---

[6] The version of section 3132 that is cross-referenced by 33 M.R.S. § 1603-117 provides that a lien on the judgment debtor's property "shall be ineffective against third persons until the judgment creditor files the lien order, if the property is real estate, with the register of deeds of the county where the real estate lies." 14 M.R.S.A. § 3132 (Supp. 1972); *cf.* 14 M.R.S. § 3131(9)(B) (stating the equivalent provision of the current disclosure statutes).

14

which therefore qualifies as the current "equivalent," *see* 33 M.R.S. § 1603-117(a), to the former section 3132. *See* 14 M.R.S.A. § 3132 (Supp. 1972).

[¶18] Sections 3131 and 3132 are among the post-judgment disclosure statutes that have as their collective purpose to "provide an efficient procedure for the enforcement of money judgments." 14 M.R.S. § 3120. Section 3131 authorizes the District Court in a disclosure proceeding to enter orders requiring property of a judgment debtor either to be turned over to a judgment creditor or, in specified circumstances, to be sold to satisfy a judgment. *See* 14 M.R.S. § 3131(1)-(2). A turnover order is available for items of property of the judgment debtor that are not wholly or partially exempt from attachment and execution, *see* 14 M.R.S. §§ 4421-4426 (2024), and that have a value no greater than the amount due on the judgment, *see* 14 M.R.S. § 3131(1). An order of sale must be obtained instead of a turnover order if the nonexempt property's value is greater than the amount due on the judgment, if the judgment debtor has partially exempt property needed to satisfy the judgment that cannot be divided into exempt and nonexempt portions, or if "the judgment debtor's property is not subject to physical division or it is otherwise impractical to provide for satisfaction of the judgment in kind." *See id.* § 3131(2).

[¶19]  Section 3131(9) establishes that a turnover order or an order of sale becomes a lien on the property that is the subject of the order and also establishes the procedure for perfecting the lien:

> **9. Lien**.  An order entered pursuant to this section constitutes a lien against the property which is the subject of the order and against the proceeds of any disposition of the property by the judgment debtor which occurs at any time after entry of the order. The lien extends to proceeds of any disposition of the property, real or personal, subject to the lien of the judgment creditor to the extent that a secured party would have an interest in the proceeds under Title 11, section 9-1315, subsection (1).  The lien must be for the full amount of the unpaid judgment, interest and costs, and *becomes perfected as to 3rd parties on the earlier of:*
>
> . . . .
>
> **B.** *If the property is real estate, the time when an attested copy of the turnover or sale order is filed with the registry of deeds where a mortgage would be filed to be duly perfected;*

*Id.* § 3131(9) (emphasis added).

[¶20]  It is the last provision that is incorporated by reference in the lien provision of the Maine Condominium Act that Maples and Brown seek to use to enforce their judgment against the seven condominium units:

> A judgment for money against the association, *if a lien order is filed with the Register of Deeds of the county where the condominium is located*, as provided in Title 14, section 313[1] . . . is a lien in favor of the judgment lienholder against all of the units in the condominium at the time the judgment was entered.

33 M.R.S. § 1603-117(a) (emphasis added). "[L]ien order" plainly means a turnover order or order of sale that can be perfected as a lien on the property described in the order. *See* 14 M.R.S. § 3131(9). The judgment lien that Maples and Brown have obtained under 14 M.R.S. § 4651-A is not a lien *order*. *See* Susan Calkins, *The New Disclosure Statutes*, 2 Me. Bar J. 350, 353-54 (1987) (contrasting a lien resulting from a turnover or sale order from an execution lien, which is obtained pursuant to section 4651-A).

[¶21]  Thus, to invoke section 1603-117 against the seven units, Maples and Brown must obtain an order for turnover or sale of the units that is available only through the District Court disclosure procedure. *See Landmark Realty*, 2004 ME 85, ¶ 8, 853 A.2d 749 ("[I]f the disclosure proceeding had taken place in the Probate Court or the Superior Court, there would have been a lack of subject matter jurisdiction because disclosure proceedings are not among the class of cases within the statutory jurisdiction of either of those courts."); M.R. Civ. P. 69 (providing that a judgment creditor who has obtained an execution may seek discovery against the judgment debtor in a disclosure proceeding "only upon the order . . . of the District Court"). Although the disclosure procedure is not exclusive, it cannot be employed piecemeal in the

Superior Court—only the District Court has jurisdiction to issue turnover orders and orders of sale pursuant to 14 M.R.S. § 3131.

[¶22]  The transfer of Maples and Brown's action on the judgment from the Superior Court to the Business and Consumer Docket did not cure the Superior Court's lack of subject matter jurisdiction.  The Business and Consumer Docket is a statewide docket designed to facilitate the efficient and cost-effective litigation of complex business disputes that originate in either the Superior Court or the District Court.  *See* M.R. Civ. P. 130(a).  When a case is transferred to the Business and Consumer Docket, *see* M.R. Civ. P. 130(a)(3), 131, the Business and Consumer Docket exercises the subject matter jurisdiction of the originating court.

[¶23]  Maples and Brown's operative complaint contends that the court has the "inherent equitable power" to issue the turnover order or order of sale required to perfect a judgment creditor's lien against condominium units pursuant to 33 M.R.S. § 1603-117, but the court's equitable power does not extend to issuing orders under a statute that the court lacks jurisdiction to enforce.[7]  Because the Business and Consumer Docket, acting in an action

---

[7] Although the disclosure process is the exclusive means for enforcing section 1603-117, neither it nor the Maine Condominium Act precludes any party from raising equitable issues.  *See* 14 M.R.S. § 3131(10) ("The court is given equitable powers to make all appropriate orders to effectuate or

commenced in Superior Court, lacked authority to issue a turnover order or order of sale pursuant to 14 M.R.S. § 3131, it lacked jurisdiction to adjudicate Maples and Brown's claim against the seven condominium units pursuant to 33 M.R.S. § 1603-117(a) and 14 M.R.S. § 3131(9). Accordingly, the court did not err in dismissing their claim.

The entry is:

Judgment affirmed.

---

Brendan P. Rielly, Esq. (orally), Jensen Baird, Portland, for appellants Charles R. Maples and Kathy S. Brown

Richard Silver, Esq. (orally), Winterport, for appellees Compass Harbor Village Condominium Association and Compass Harbor Village, LLC

Business and Consumer Docket docket number CIV-2021-2
FOR CLERK REFERENCE ONLY

---

compel obedience to turnover or sale orders."); 33 M.R.S. § 1601-108 (2024) ("The principles of law and equity, including the law of corporations and unincorporated associations, the law of real property and the law relative to capacity to contract, principal and agent, eminent domain, estoppel, fraud, misrepresentation, duress, coercion, mistake, receivership, substantial performance or other validated or invalidating cause supplement the provisions of this Act, except to the extent inconsistent with this Act."); *see also Keniston v. JPMorgan Chase Bank*, 2007 ME 29, ¶ 1, 918 A.2d 436 (involving a judgment debtor's equitable action to contest a judgment lien); M.R. Civ. P. 60(b)(5) (allowing a judgment to be altered or amended if it is no longer equitable for it to apply prospectively).